83 F.3d 318
 96 Cal. Daily Op. Serv. 3256, 96 Daily Journal
D.A.R. 5337
Comesy I. BARNEY, Petitioner-Appellant,
v.
Clifton ROGERS, District Director, Immigration and
Naturalization Service, Respondent-Appellee.
 No. 94-56561.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 9, 1996.
Decided May 8, 1996.
 
 Christina Perez, Humberto R. Gray, Blalock & Gray, Los Angeles, California, for petitioner-appellant.
 Patrick J. Walsh, Assistant United States Attorney, Los Angeles, California, for respondent-appellee.
 Appeal from the United States District Court for the Central District of California Irving Hill, District Judge, Presiding. No. CV 93-07096-IH(JK).
 Before: GOODWIN, HAWKINS, Circuit Judges, and MARQUEZ,* District Judge.
 GOODWIN, Circuit Judge:
 
 
 1
 Comesy I. Barney, a native and citizen of Nigeria, appeals the denial of her petition for a writ of habeas corpus. Petitioner challenged the decision of the Board of Immigration Appeals ("BIA") to place her in exclusion proceedings, and subsequently exclude her from the United States, after her Application for Adjustment of Status was denied by the Immigration and Naturalization Service (the "INS"). We affirm.
 
 
 2
 Petitioner argues that because she obtained advance parole to leave the United States and then to return to pursue her pending Application for Adjustment of Status, she is entitled to be returned to the immigration status she had prior to leaving the country, that of illegal overstay. As an illegal overstay, Petitioner would be subject to deportation proceedings rather than exclusion proceedings. The difference between exclusion and deportation is more than mere nomenclature. See Landon v. Plasencia, 459 U.S. 21, 25-27, 103 S.Ct. 321, 325-26, 74 L.Ed.2d 21 (1982). Aliens in deportation proceedings are afforded procedural protections not available to aliens in exclusion proceedings. Id.
 
 
 3
 Petitioner alternatively argues that prior to leaving the United States she did not receive adequate notice that if her Adjustment of Status Application was subsequently denied she would be subject to exclusion proceedings.
 
 I. JURISDICTION
 
 4
 We have jurisdiction over this appeal pursuant to 28 U.S.C. § 2253. The district court had jurisdiction pursuant to 8 U.S.C. § 1105a(b) which directs that "an alien against whom a final order of exclusion has been made ... may obtain judicial review of such order by habeas corpus proceedings and not otherwise."
 
 II. FACTS AND PROCEDURAL HISTORY
 
 5
 Petitioner first entered the United States as a visitor under B-2 status on February 6, 1983 and subsequently was granted F-1 status as a student. Her student status expired in 1984 but Petitioner remained in the United States illegally as an "overstay."
 
 
 6
 On October 10, 1990 Petitioner married a United States citizen who filed an Immediate Relative Visa Petition on her behalf. On November 15, 1990, Petitioner filed an Application for Adjustment of Status ("Adjustment Application"), pursuant to 8 U.S.C. § 1255(a), to be adjusted from her illegal overstay status to that of a temporary resident. This application was contingent on her obtaining the Immediate Relative Visa.
 
 
 7
 In December 1990, Petitioner obtained advance parole[1] so that she could travel to Nigeria to visit her ailing mother. She received an I-512 Advance Parole Form which advised:
 
 
 8
 If your application for Adjustment of Status is denied, you will be subject to exclusion proceedings under Section 236 of the Immigration and Nationality Act. Individual to be paroled into the United States for an indefinite period of time providing prima facie eligibility for adjustment of status continues.
 
 
 9
 Petitioner returned to the United States on January 23, 1991 and was paroled into the country because her Adjustment Application was still pending.
 
 
 10
 On March 13, 1991, Petitioner's husband withdrew the Immediate Relative Visa Petition. The reason for the withdrawal is not material, but the fact of the withdrawal prompted the INS to deny Petitioner's Adjustment Application. On August 26, 1991 the INS initiated exclusion proceedings against Petitioner for failing to possess a labor card and for failing to possess a valid immigrant visa. At the exclusion hearing, the Immigration Judge ordered Petitioner excluded from the United States. The Board of Immigration Appeals affirmed. As noted, the district court denied Petitioner habeas corpus relief.
 
 III. STANDARD OF REVIEW
 
 11
 Review of a final order of exclusion is based solely on the evidence adduced before the Immigration Judge as contained in the administrative record. 8 U.S.C. § 1226(b). Findings of fact are reviewed under the substantial evidence standard. INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). Legal interpretations are reviewed de novo. Desir v. Ilchert, 840 F.2d 723, 726 (9th Cir.1988).
 
 IV. EXCLUSION PROCEEDINGS
 
 12
 Petitioner relies upon 8 C.F.R. § 212.5(d)(2), which provides that at the expiration of the time for which parole was authorized, the alien "shall be restored to the status which he or she had at the time of parole." She then turns to 8 U.S.C. § 1251(a)(1)(C)(i), which states that an illegal overstay is subject to deportation proceedings. It follows, she asserts, that because she was an illegal overstay when she received advance parole she is entitled to the procedural and substantive rights associated with deportation proceedings. Her reliance on § 212.5(d)(2) is misplaced.
 
 
 13
 Although Petitioner received advance parole-a promise of parole upon her return-while she was an illegal overstay, she was not "paroled" until she returned to the United States from Nigeria. That means that "at the time of parole," as distinguished from the time of advance parole, she was an excludable alien like all aliens who seek admission to the United States at designated ports of entry. See Leng May Ma v. Barber, 357 U.S. 185, 186, 78 S.Ct. 1072, 1073, 2 L.Ed.2d 1246 (1958)(once an alien is paroled into the United States she is not entitled to deportation proceedings, only exclusion proceedings); Landon v. Plasencia, 459 U.S. at 27-28, 103 S.Ct. at 326-27 (INS can adjudicate the admissibility of all aliens seeking to reenter the United States in exclusion proceedings regardless of their status); 8 U.S.C. § 1182(a)(7)(B)(i)(II)(excludable aliens include nonimmigrants who are "not in possession of a valid nonimmigrant visa ... at the time of application for admission"). In other words, the advance parole gave Petitioner the right to return for the purpose of completing her Adjustment Application; it did not "freeze" her status as an illegal overstay.
 
 
 14
 Our interpretation is directly supported by federal regulation providing: "[i]f the [Adjustment Application] of an individual granted advance parole is subsequently denied the applicant will be subject to the exclusion provisions of section 236 of the Act. No alien granted advance parole and inspected upon return shall be entitled to a deportation hearing." 8 C.F.R. § 245.2(a)(4)(ii).
 
 
 15
 Petitioner mistakenly relies on Navarro-Aispura v. INS, 53 F.3d 233 (9th Cir.1995), affirming 842 F.Supp. 1225 (N.D.Cal.1993), to support the proposition that she should be afforded deportation proceedings notwithstanding the language of 8 C.F.R. § 245.2(a)(4)(ii). In Navarro-Aispura, the alien was seeking registry pursuant to 8 U.S.C. § 1259.[2] He had been granted advance parole to pursue his registry application after he returned from a brief trip to Mexico, and was placed in exclusion proceedings after his registry application was denied. In ordering that the registry applicant be placed in deportation proceedings, we pointed out that 8 C.F.R. 245.2(a)(4)(ii), "on its face", clearly applied only to adjustment of status applications that had been denied, and not to registry applications that had been denied. See Navarro-Aispura, 53 F.3d at 235-36.
 
 V. NOTICE
 
 16
 Petitioner argues that the remarks on the I-512 Advance Parole Form did not adequately inform her, given that she did not have the guidance of counsel, that as a returning parolee she would be subject to exclusion proceedings rather than deportation proceedings. Petitioner asserts that the INS officials should have given her a detailed explanation of exclusion, deportation, and the consequences of accepting the advance parole.
 
 
 17
 The Government correctly responds that the INS is barred from giving the kind of legal advice to aliens that Petitioner claims she should have received. In addition, Petitioner, without the aid of counsel, was not only able to determine that she needed advance parole if she wanted to leave the country and return, but also obtained the advance parole on her own. Petitioner was not misled or trapped by the INS. The notice she received was adequate.
 
 
 18
 Petitioner has advanced other arguments that do not require discussion.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable Alfredo C. Marquez, Senior United States District Judge for Arizona, sitting by designation
 
 
 [1]
 Parole is the legal fiction whereby an alien is allowed to be physically present in the United States for a specific purpose. The alien is not deemed to have "entered" the United States as that term is used in 8 U.S.C. § 1101(a)(13) of the Immigration and Nationality Act. The authority for advance parole is derived from 8 U.S.C. § 1182(d)(5)
 
 
 [2]
 The discretionary grant of registry pursuant to 8 U.S.C. § 1259 provides amnesty and permanent residency status for aliens who entered the United States prior to 1972, have resided continuously in the United States since entry, are of good moral character, and are not otherwise ineligible for citizenship