Atma SINGH, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 01–70139.
I & NS No. A90–815–135.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 3, 2001 *.

Decided Jan. 8, 2002.

Ferguson, Circuit Judge, concurred
and filed opinion.

---

* This panel unanimously finds this case suit-
able for decision without oral argument.  See  Fed. R.App. P. 34(a)(2).

Before FERGUSON, T.G. NELSON and W. FLETCHER, Circuit Judges.

### MEMORANDUM **

Atma Singh, a native and citizen of India, petitions for review from the Board of Immigration Appeal (BIA) decision finding that he was properly placed in exclusion proceedings and that he was excludable. Singh contends that he should have been placed in deportation proceedings rather than exclusion proceedings because he had applied for temporary resident status under the Special Agricultural Workers' Program pursuant to § 210 of the Immigration and Nationality Act, 8 U.S.C. § 1160, and had been granted an employment and travel authorization card. We reject his arguments and affirm the BIA's ruling.

### I

Petitioner Singh is a 47–year–old male, native and citizen of India, who first entered the United States without inspection in 1985. In 1987, Petitioner applied for temporary resident status under the Special Agricultural Workers' Program ("SAW") pursuant to § 210 of the Immigration and Nationality Act, 8 U.S.C. § 1160. While Petitioner's SAW applica-

tion was pending, he was granted an employment and travel authorization card (Form I–688A) pursuant to 8 C.F.R. § 210.4(b)(2). Petitioner continued to renew his Form I–688A authorization while the appeal of the denial of his SAW application remained pending, with an outer expiration limit of July 1997.

On September 6, 1996, the INS denied Petitioner's SAW appeal. Petitioner later acknowledged that he understood that this decision had been served upon his attorney, who attempted to contact Petitioner to inform him of the decision. Petitioner also admits that he did not inform his attorney of his change of address, which occurred prior to the September 6 decision, and that such failure may have prevented his attorney from notifying Petitioner of the dismissal.

Petitioner claims, without any witnesses, that he visited an INS office in the Los Angeles area in September or October of 1996, and that an INS employee told him that he could travel abroad and reenter the United States without problems with his Form I–688A card.

Thereafter, in December 1996, Petitioner, allegedly relying on the aforementioned advice, traveled to India to visit his family. Upon his attempted reentry into the United States in February 1997, the INS detained Petitioner. The INS issued a charging document, alleging that Petitioner was excludable as an alien entering the United States without a valid entry document pursuant to § 212(a)(7)(A)(i)(I) of the Immigration & Nationality Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I). The IJ found Petitioner excludable and the BIA agreed. This appeal followed.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## II

### A. *Due Process Claim*

Petitioner claims a due process violation because he "was not given specific notice of the risk of being subjected to exclusion proceedings upon his reentry to the United States." Within this allegation, Petitioner seems to be claiming two different types of inadequate notice by the INS: (1) failure to indicate on or with the Form I–688A that travel authorization would terminate upon denial of the SAW appeal; and (2) failure to indicate that aliens with a terminated Form I–688A (i.e. after denial of the SAW appeal) would be subject to exclusion rather than deportation proceedings upon returning to the United States. Neither claim of inadequate notice can support a due process violation.

■ First, the INS regulation governing employment and travel authorization for SAW applicants provided constructive notice to Petitioner that his Form I–688A was no longer valid at the time of his reentry: "Employment authorization . . . will be restricted to increments not exceeding 1 year, *pending final determination on the application for temporary resident status.*" 8 C.F.R. § 210.4(b)(2) (1997) (emphasis added). The plain meaning of the limiting phrase—"pending final determination"—indicates that once a final determination has been made, the authorization ceases. This reading is consistent with the apparent intent of the regulation: to allow an alien with an application pending under section 210 of the INA to remain in the United States while his application was pending. Petitioner does not refute or challenge that this is the proper reading. Thus, the regulation provided constructive notice to Petitioner that his travel authorization terminated upon the denial of his SAW appeal. *See In re G–A–C–,* 1998 WL 394560 (Interim Decision 3354) (BIA July 9, 1998) ("While one could argue

whether the [alien] fully understood the significance of his departure and whether clearer language could or should have been used to advise him of the consequences of his departure, those issues are not determinative of the question of statutory or regulatory authority."). The fact that Petitioner might not have known that his SAW appeal was dismissed before his departure does not change the result because he was at fault for the delayed notice, as he did not notify his attorney of his new address. The INS provided appropriate notice of its denial of Petitioner's appeal.

■ Second, the INS was not required to provide Petitioner notice of the specific consequences—exclusion proceedings—of returning to the United States after the SAW appeal had been denied (i.e. after Form I–688A was no longer valid). Although the INS is not permitted to misstate the law, it does not have to provide the extent of legal advice that Petitioner claims he should have received. *See Barney v. Rogers,* 83 F.3d 318, 321 (9th Cir. 1996). With respect to Petitioner's allegation that the INS official affirmatively misinformed him, the IJ found insufficient proof that Petitioner was ever erroneously advised regarding his travel privileges. Thus, there is an insufficient basis to find that Petitioner was "misled or trapped by the INS." *Barney,* 83 F.3d at 321.

■ Petitioner's reliance on *Navarro–Aispura v. INS,* 53 F.3d 233 (9th Cir. 1995), is misplaced here. That case presented a more compelling case for notice because the INS instituted exclusion proceedings upon the denial of the Navarro's registry application *well after the alien had properly reentered the United States. But for* his advance parole status, Navarro would have been placed in deportation proceedings since he was back in the United States at the time his application was de-

nied. He had no reason to expect that the prior grant of advance parole would affect his status. Here, in contrast, Singh was legally no different than any person attempting to enter the United States without a valid travel document. The Supreme Court's decision in *Landon v. Plasencia,* 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), provided Petitioner constructive notice that he would face exclusion proceedings at the time of his attempted reentry. *See id.* at 27–28 (concluding that the INA authorizes INS to adjudicate the admissibility of all aliens seeking to reenter the United States in exclusion proceedings regardless of their status). Hence, the INS properly placed Petitioner in exclusion proceedings without depriving him of due process.

### B. *Equitable Estoppel Claim*

■ Petitioner alleges that INS committed affirmative misconduct, thereby justifying equitable estoppel against the INS, in two ways: (1) by issuing to Petitioner a Form I–688A, thus inducing Petitioner to travel to his detriment; and (2) by giving erroneous advice to Petitioner, further inducing Petitioner to travel to his detriment.

The first element of affirmative misconduct requires Petitioner to show that INS acted erroneously. *INS v. Miranda,* 459 U.S. 14, 16, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982). Since INS acted according to its regulations in issuing the Form I–688A authorization to Petitioner, a SAW applicant, it cannot be found to have acted erroneously. *See* 8 C.F.R. § 210.4(b)(2). Further, as discussed above, the IJ found insufficient proof that Singh was erroneously advised by the INS officer regarding his travel privileges. There is insufficient evidence in the record to overturn the IJ's factual finding on that issue. Both of Peti-

tioner's claims that the INS committed affirmative misconduct thus fail.

### C. *Equal Protection Claim*

■ Petitioner alleges that INS violated Petitioner's right to equal protection, because other similarly situated aliens who failed to receive adequate notice that they would be subject to exclusion proceedings were instead placed in deportation proceedings. Similarly situated SAW applicants are subject to the same regulations, and Petitioner has advanced no proof of disparate treatment among SAW applicants facing his circumstances. Aliens with advance parole who have been placed in deportation proceedings when their applications are subsequently denied, such as the aliens in *Navarro* and *Patel v. Landon,* 739 F.2d 1455 (9th Cir.1984), are not similarly situated because they had already reentered *before* denial of their residency applications, and, in any case, were subject to different regulations. Thus, Petitioner's equal protection claim fails. *See Miller v. Albright,* 523 U.S. 420, 433–36, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (rejecting equal protection claim because the challenged classes were not "similarly situated").

AFFIRMED.

FERGUSON, Circuit Judge, concurring.

I concur in the memorandum disposition. I write separately in order that the Immigration and Naturalization Service does not mistake this case as similar to another one which was before this panel.

In *Morales–Mancebo v. Immigration and Naturalization Service,* No. 00–70788, INS No. A92–874–509, we issued an order deferring submission of that case for 90 days to allow the parties to mediate and attempt to settle.

Both cases involve temporary resident status under the Special Agricultural

Worker's program. In this case, the petitioner's travel authorization was terminated *before* he departed the United States.

In *Morales–Mancebo,* the petitioner traveled to Mexico to donate blood to his son who was ill. When he left the United States for two or three days, his travel authorization was still valid. It was terminated *after* he left and before he returned.