# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1405

_____

Charles Geach,                                  *
                                                *
                   Appellant,                   *
                                                *
        v.                                      *
                                                *
Michael Chertoff,[1] Director of the            *    Appeal from the United States
Department of Homeland                          *    District Court for the District of
Security; Mark Cangemi, District                *    Minnesota.
Director of the Bureau of Customs               *
and Immigration Enforcement;                    *
Alberto Gonzales, United States                 *
Attorney General, Department of                 *
Justice,                                        *
                                                *
                   Appellees.                   *

_____

Submitted: September 15, 2005
Filed:  March 3, 2006

_____

Before MURPHY, BRIGHT, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

_____

[1]Pursuant to Fed. R. App. P. 43(c)(2), Michael Chertoff is substituted for Tom Ridge.

Charles Geach ("Geach"), a citizen of the United Kingdom, was charged as inadmissible due to two foreign convictions. He was placed in exclusion proceedings because he last had entered the United States pursuant to advance parole. Throughout his administrative hearings, Geach was denied the opportunity to apply for suspension of deportation pursuant to 8 U.S.C. § 1254 (repealed 1996).[2] After he was ordered excluded and had exhausted his administrative appeals, the district court[3] denied his petition for habeas corpus relief. On appeal, Geach argues that the district court erred in this denial because the advance parole regulation that precludes him from applying for suspension of deportation is ultra vires to § 1254 and violates his right to due process and equal protection. For the reasons discussed below, we affirm.

## I.    BACKGROUND

Geach came to the United States for the first time in 1984 on a B-2 visitor visa. He married a United States citizen eight days after his arrival and filed an application to adjust his status to permanent resident. During the pendency of his application, Geach traveled to England on three occasions: in 1985, 1986, and 1991. Before each trip, he obtained a grant of advance parole from the former Immigration and Naturalization Service ("INS") that permitted him to travel outside the United States with the assurance that he would be allowed to reenter and not be deemed to have abandoned his application for adjustment of status. The advance parole documents issued to Geach for his second and third trips included the following warning: "if your application for adjustment of status is denied, you will be subject to exclusion proceedings."

---

[2]We use the statute as it existed in 1994, the year of Geach's first exclusion proceeding. *See* discussion *infra* Section II.B.

[3]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

In 1992, the INS denied Geach's application for permanent residency because he had two foreign convictions for possession of marijuana prior to his arrival in 1984. *See* 8 U.S.C. § 1182(a)(2)(A)(i). The INS placed Geach in exclusion proceedings because he last reentered the United States under a 1991 grant of advance parole associated with his third trip to England.

In 1994, the Immigration Judge ("IJ") at Geach's first exclusion hearing granted Geach's request to terminate exclusion proceedings so he could apply for suspension of deportation. The INS appealed this decision, however, and the Board of Immigration Appeals ("BIA") reinstated Geach's placement in exclusion proceedings because of his advance parole status. In 1999, the matter was remanded to the IJ, who excluded Geach and denied his request to seek suspension of deportation. The BIA affirmed these rulings.

In 2003, Geach petitioned the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[4] He argued that the regulation preventing him from seeking suspension of deportation was ultra vires to the suspension of deportation statute and that his placement in exclusion proceedings violated his constitutional right to due process and equal protection. The district court denied Geach's petition.

## II. DISCUSSION

### A. Standard of Review

This Court reviews de novo a question of law in a denial of a habeas petition, *Grove v. Fed. Bureau of Prisons*, 245 F.3d 743, 746 (8th Cir. 2001), but must give

---

[4]Geach properly sought habeas corpus instead of directly appealing his exclusion: "any alien against whom a final order of exclusion has been made . . . may obtain judicial review of such order by habeas corpus proceedings and not otherwise." 8 U.S.C. § 1105a (repealed 1996).

substantial deference to the INS's interpretation of federal statutes and regulations, *see INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).

## B. Applicable Law

Because proceedings in this case began prior to April 1, 1997, we apply the transitional rules of the Illegal Immigrant Reform and Immigration Responsibility Act (IIRIRA) and, therefore, apply the provisions of the former Immigration and Naturalization Act (INA) to the merits of this case.[5] *See, e.g.*, *Sol v. INS*, 274 F.3d 648, 650 (2d Cir. 2001); *see generally* 8 U.S.C. § 1101.

## C. Ultra Vires

Geach argues that the advance parole regulation, 8 C.F.R. § 245.2(a)(4)(ii) (1991) (amended 1996), is ultra vires to the statute that establishes suspension of deportation, 8 U.S.C. § 1254, because the advance parole regulation denies suspension of deportation to aliens admitted on advance parole who otherwise meet the statutory requirements of § 1254. We disagree.

Under the INA, aliens who arrive at the United States border are subject to exclusion proceedings while aliens who are physically present in the United States are subject to deportation proceedings. *See* 8 U.S.C. § 1251(a) (1991) (current version at 8 U.S.C. § 1226). One exception to this general rule is the concept of "parole." Aliens who are physically present in the United States pursuant to a grant of parole are not considered "admitted" for purposes of deportation proceeding eligibility. 8

---

[5]The Government argues that the IIRIRA's "stop-time" rule precludes Geach from obtaining his desired ultimate relief, suspension of deportation. *See* 8 U.S.C. § 1229b(d)(1); *Afolayan v. INS*, 219 F.3d 784, 787-89 (8th Cir. 2000). Because we affirm the district court on other grounds, we do not address the question of whether the stop-time rule precludes such relief.

U.S.C. § 1182(d)(5)(A). The Attorney General created "advance parole" to allow aliens who are present in the United States and have applied for an adjustment of status to travel outside the United States without abandoning their applications. 8 C.F.R. § 245.2(a)(4)(ii). A potential consequence of advance parole, however, is mandatory placement in exclusion proceedings. "If the application [for adjustment of status] of an individual granted advance parole is subsequently denied, the applicant will be subject to the exclusion provisions of . . . the Act. No alien granted advance parole and inspected upon return shall be entitled to a deportation hearing." 8 C.F.R. § 245.2(a)(4)(ii). Thus, a consequence of placement in exclusion proceedings is the inability to apply for suspension of deportation. *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958); *see also Sherifi v. INS*, 260 F.3d 737, 740 (7th Cir. 2001) (recognizing the "longstanding principle that persons in exclusion proceedings prior to April 1, 1997 are ineligible to apply for suspension of deportation").

The advance parole regulation is not ultra vires to the suspension of deportation statute because the Attorney General's ability to suspend deportation is discretionary. 8 U.S.C. § 1254 ("the Attorney General may, *in his discretion*, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence" (emphasis added)). Given this broad discretion Congress granted to the Attorney General with regard to suspension of deportation, the Attorney General's decision to categorically exclude aliens under advance parole from suspension of deportation relief is not outside the scope of § 1254. *See Leng May Ma*, 357 U.S. at 186 (holding that aliens who are paroled into the United States are not entitled to deportation proceedings, only exclusion proceedings); *Barney v. Rogers*, 83 F.3d 318, 321 (9th Cir. 1996) (holding that an alien with a pending adjustment application was placed properly in exclusion proceedings following a grant of advance parole). "We are unable to understand why there should be any general principle forbidding an administrator, vested with discretionary power, to determine by appropriate rulemaking that he will not use it in favor of a particular class on a case-by-case basis

-5-

. . . .” *Mouelle v. Gonzalez*, 416 F.3d 923, 929 (8th Cir. 2005) (quoting *Fook Hong Mak v. INS*, 435 F.2d 728, 730 (2d Cir. 1970)).

Geach raises a number of ultra vires arguments on appeal to establish that Congress did not intend for aliens to be categorically denied suspension of deportation when they otherwise satisfy the statutory prerequisites of § 1254. These arguments fail, however, because they rest on a false premise. Aliens are not automatically eligible for suspension of deportation just because they could satisfy the prerequisites if allowed to apply. Geach overlooks the fact that the inquiry into an alien's eligibility for suspension of deportation is subordinate to the Attorney General's overriding discretion to determine who is eligible for such suspension. *See Patel v. McElroy*, 143 F.3d 56, 58 (2d Cir. 1998) (holding that an alien in exclusion proceedings is not entitled to apply for suspension of deportation).

The dissent, after emphasizing that under § 1254, a brief, casual and innocent trip abroad by itself does not render an alien ineligible for suspension of deportation, also fails to take the next step and acknowledge the Attorney General's discretion under § 1254 to deny suspension of deportation on other grounds to aliens who might otherwise meet the statutory criteria. The advance parole regulation did not deny Geach an opportunity to apply for suspension of deportation merely because of his brief trips abroad; that would indeed be a direct contravention of § 1254 and, thus, unallowable. Instead, the advance parole regulation granted Geach the benefit of making those trips without abandoning his application for adjustment of status to permanent resident—in return for the burden of going directly into exclusion proceedings, rather than potentially more forgiving deportation proceedings, should his application for adjustment of status ultimately be denied. Nothing in § 1254 precludes the Attorney General from exercising his discretion in this manner.[6]

---

[6]As we discuss *infra* with regard to Geach's equal protection claim, it is rational to place paroled aliens in exclusion proceedings, for example, to offset the administrative burdens created by their departures during the pendency of their

Furthermore, as the dissent recognizes, we have held that the Attorney General can exercise such a statutory grant of broad discretion by rule as well as on a case-by-case basis, *Mouelle* 416 F.3d 928-930, and there is no reason to depart from that well-reasoned holding in this case.

We are aware of the resulting hardship for Geach, a longtime resident, and his American family. Nevertheless, consistent with the advance parole regulation, the advance parole document warned Geach that his travel to England could result in exclusion proceedings, and he was placed in those exclusion proceedings when his application for adjustment was denied. Geach's resultant inability to apply for suspension of deportation was not ultra vires to the Attorney General's broad statutory discretion with respect to suspension of deportation.

### D. Equal Protection

Geach argues that his inability to seek suspension of deportation violates his right to equal protection. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) (holding that aliens are protected by the Fifth Amendment's equal protection guarantee). To establish an equal protection violation, Geach must identify a class of similarly situated persons who are treated dissimilarly. *See Anderson v. Cass County, Mo.*, 367 F.3d 741, 747 (8th Cir. 2004). Disparate treatment of similarly situated aliens will be upheld, however, if the Government has a rational basis for its classifications. *See, e.g., Vasquez-Velezmoro v. INS*, 281 F.3d 693, 697 (8th Cir. 2002).

As a threshold matter, the Government argues that we do not have subject-matter jurisdiction over this constitutional issue because Geach failed to exhaust administrative remedies on this issue. This is an issue of first impression for this Court. We are prohibited from exercising subject-matter jurisdiction when an alien

---

adjustment applications.

fails to exhaust administrative remedies "unless the petition presents grounds which the court finds could not have been presented in such prior proceeding." 8 U.S.C. § 1105a(c). We agree with the circuits that have considered this issue and hold that we have subject-matter jurisdiction over aliens' unexhausted constitutional claims unless the claims concern procedural errors correctable by the administrative tribunal. *See, e.g.*, *Castaneda-Suarez v. INS*, 993 F.2d 142, 144 (7th Cir. 1993); *Ravindran v. INS*, 976 F.2d 754, 762-63 (1st Cir. 1992); *Bagues-Valles v. INS*, 779 F.2d 483, 484 (9th Cir. 1985) (holding that aliens are not precluded from raising due process claims on appeal that were not raised during administrative proceedings because the BIA has no jurisdiction to adjudicate constitutional issues). Geach's equal protection claim does not concern a procedural error. *See Ravindran*, 976 F.2d at 762-63 (suggesting that "challenging the constitutionality of . . . statutes [or] regulations" is not a procedural error). Therefore, we consider the merits.

Geach argues that he is similarly situated to aliens who reenter the United States without advance parole and that the Government failed to provide a rational basis for allowing those aliens to seek suspension of deportation but not allowing him to apply.[7] Aliens who attempt to legally reenter the United States without advance parole are treated as applicants for admission, 8 U.S.C. § 1225(a), thereby subjecting them to exclusion proceedings and rendering them ineligible for suspension of deportation. Therefore, the only aliens who reenter without advance parole and are allowed to apply for suspension of deportation are aliens who illegally reenter the United States.

---

[7]In earlier proceedings, Geach argued that he was similarly situated to aliens who apply for status adjustments and do not depart the United States during the pendency of their application. Geach abandoned this argument on appeal. His fleeting reference to "aliens who failed to depart" in the last sentence of the argument section in his opening brief is insufficient to constitute an appellate "argument." *See* Fed. R. App. P. 28(a)(9)(A) (requiring appellants' briefs to contain arguments "with citations to the authorities and parts of the record on which the appellant relies"); *United States v. Zavala*, 427 F.3d 562, 565 (8th Cir. 2005) (holding an argument abandoned despite a brief mention of the issue in appellant's brief).

Geach is not similarly situated to these illegal aliens because they are subject to criminal charges and other adverse consequences. *See, e.g.*, 8 U.S.C. § 1326 (establishing fines and imprisonment for illegal reentry); 8 C.F.R. 245.2(a)(4)(ii) (deeming aliens who reenter illegally to have abandoned their applications for adjustment of status); *cf. Dimenski v. INS*, 275 F.3d 574, 578 (7th Cir. 2001) (listing benefits of advance parole).

Even if Geach was similarly situated to aliens who reenter illegally, any difference in treatment of these aliens is justified by the government's rational basis of "efficient administration of the immigration laws at the border." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). "The authority of Congress and the executive branch to regulate the admission and retention of aliens is virtually unrestricted." *Francis v. INS*, 532 F.2d 269, 273 (2d Cir. 1976). "Rational basis review does not require us to identify the legislature's actual rationale for the distinction; rather, we will uphold the statute if 'there are plausible reasons for Congress' action.'" *Hamama v. INS*, 78 F.3d 233, 237 (6th Cir. 1996) (quoting *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980)). There are plausible reasons for establishing different administrative procedures for aliens depending on the legality of their reentries. For example, it would be rational to place paroled aliens in exclusion proceedings to offset the administrative burdens created by their departures during the pendency of their adjustment applications. *Cf. Skelly v. INS*, 168 F.3d 88, 91-92 (2d Cir. 1999) (holding that conservation of government resources is a rational basis for differing procedures for aliens in exclusion proceedings and aliens in deportation proceedings).

## E.  Due Process

Geach alleges generally that his inability to apply for suspension of deportation violates due process because his long-time residency in the United States creates a liberty interest in continuing to reside in the United States. Geach does not adequately

develop a due process argument in his brief.[8]  *See Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003) ("To demonstrate a violation of due process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice.").  However, we agree with the district court that Geach's placement in exclusion proceedings satisfies due process.  *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."); *Borrero v. Aljets*, 325 F.3d 1003, 1007 (8th Cir. 2003) (holding that regulations governing the parole of aliens do not violate the Fifth Amendment's Due Process Clause).  Geach is entitled to adequate notice and a fair hearing.  *Woodby v. INS*, 385 U.S. 276, 286 (1966).  He received both.  *See Nwandu v. Crocetti*, 8 Fed. Appx. 162, 165-66 (4th Cir. 2001) (unpublished per curiam) (holding that advance-parole form provides adequate notice of possible placement in exclusion proceedings).  His placement in an exclusion hearing rather than a deportation hearing does not violate due process.

## III.  CONCLUSION

For the reasons set forth above, we affirm.

BRIGHT, Circuit Judge, dissenting.

It has been said that there are ten million illegal aliens residing in this country as of 2004.  GAO, *Immigration Enforcement: Weaknesses Hinder Employment Verification and Worksite Enforcement Efforts*, at *1 (Aug. 2005), *available at* www.gao.gov/new.items/d05813.pdf.  That is a sad state of affairs and something needs to be done to resolve this problem.  However, Charles Geach is not part of the

---

[8]Geach raised more detailed due process arguments in earlier proceedings and in his reply brief.  However, he abandoned such arguments on appeal by failing to raise them in his opening brief.  *See* Fed. R. App. P. 28(a)(9); *supra* note 6.

problem. Geach entered this country in 1984 on a visitor visa, married an American, and filed an application to adjust his status to permanent residency. His application remained pending for eight years. During that time, Geach had three American children with his American wife, worked to support his family, paid taxes, and followed the laws of this country. Today, Geach has lived in this country for over twenty-one years, has a fourth American child, and owns a home with his wife. He continues to work, pay taxes, and obey the law. Geach, however, has lost the opportunity to remain in this country for a questionable reason. Geach made brief visits to see his parents in England in 1985, 1986, and 1991, with each of the three visits lasting less than thirty days. Because of those visits coupled with a prior, very minor, criminal record in his youth, Geach finds himself banned from remaining with his wife and children in this country. Yet had he not visited his parents, he would have a good opportunity of remaining here.

Let me explain.

When Geach obtained permission from the Attorney General to visit his parents in England, he received advance parole travel documents that permitted him to return to this country. However, under the INS's advance parole regulation, 8 C.F.R. § 245.2(a)(4)(ii), an alien who travels under advance parole is placed in exclusion proceedings when the INS denies the alien's adjustment application. *See* Slip Op. at 5-6. In 1992, the INS denied Geach's adjustment application and placed him in exclusion proceedings because, before coming to this country, Geach incurred two convictions for possessing marijuana as a young man in his twenties. *See* 8 U.S.C. § 1182(a)(2)(A)(i) (excluding aliens with two or more controlled substance convictions from admission into the United States). Suppose Geach had not traveled to visit his parents, then he would have been placed in deportation proceedings because he entered this country under a visa in 1984. *See Succar v. Ashcroft*, 394 F.3d 8, 12-13, 15-16 (1st Cir. 2005) (explaining that before 1996 immigration reform, aliens who made an entry into the United States were subject to deportation

-11-

proceedings while aliens who had not made an entry were subject to exclusion proceedings, and aliens paroled into the United States were treated as aliens who had not entered and therefore subject to exclusion proceedings). In deportation proceedings, Geach would have an opportunity to remain in this country despite his prior marijuana convictions by applying for suspension of deportation under 8 U.S.C. § 1254.[9]

Congress passed the suspension of deportation statute to afford some aliens relief based on the hardship that deportation would cause to their families in the United States, but made this relief available only in deportation proceedings. To qualify for this relief, Geach would need to show his deportation would cause extreme hardship to his American wife and children. He would also need to show good moral character in this country for at least seven years. *See infra* n.4 (setting forth the eligibility criteria for suspension of deportation applicable to Geach, § 1254(a)(1), (b)(2)). Favorable factors that would support the Attorney General's grant of an indefinite stay include: Geach's age (fifty-two), his long duration in the United States (twenty-one years), his strong and continuing marriage to his United States citizen wife (Elizabeth), his four United States citizen children (Christopher, James, Lucy, and Emma), his steady employment to support his family, and his following the laws of this country for over twenty-one years.

As I explain below, the regulation placing Geach in exclusion proceedings conflicts with the intent of Congress and is invalid as applied to Geach. The

---

[9]In fact, the immigration judge initially terminated exclusion proceedings "to allow Mr. Geach the opportunity to make an application for suspension of deportation," reasoning that his trips to see his parents in England were "brief, casual and innocent." Add. at 67-68. The Board of Immigration Appeals reversed and ordered that Geach be placed back in exclusion proceedings without the opportunity of suspension of deportation in accordance with the terms of the advance parole regulation. Add. at 62-64.

suspension of deportation statute gives the Attorney General discretion in deciding which, if any, aliens satisfying the statutory eligibility criteria should nonetheless be denied suspension of deportation. *See infra* n.4 (setting forth the text of § 1254(a)). However, the Attorney General's discretion under this statute is not without limits.

The statutory structure of setting forth eligibility criteria and giving the Attorney General discretion to grant or deny relief to qualifying aliens is common to many forms of immigration relief. *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987), discussed the concept of discretion granted the Attorney General in certain immigration matters. The Court commented:

> This vesting of discretion in the Attorney General is quite typical in the immigration area, *see, e.g., INS v. Jong Ha Wang*, 450 U.S. 139, 101 S. Ct. 1027, 67 L.Ed.2d 123 (1981). If anything is anomalous, it is that the Government now asks us to restrict its discretion to a narrow class of aliens. Congress has assigned to the Attorney General and his delegates the task of making these hard individualized decisions; although Congress could have crafted a narrower definition, it chose to authorize the Attorney General to determine which, if any, eligible refugees should be denied asylum.

*Id.* at 444-45.

In *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005), the First Circuit considered the scope of the Attorney General's delegated authority under the adjustment of status statute, 8 U.S.C. § 1255.[10] The statute included aliens paroled into this country among

---

[10]The court quoted the applicable text of Section 1255(a):

> The status of an alien who was *inspected and admitted or paroled* into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an

-13-

the class of aliens eligible for adjustment of status. *Id.* at 14. However, the INS later promulgated a regulation, 8 C.F.R. § 245.1(c)(8), that made "*[a]ny arriving alien who is in removal proceedings*" ineligible for adjustment of status.[11] *Id.* at 17. The appellant argued that the regulation was contrary to Section 1255(a) because it would have the effect of denying adjustment of status to most paroled aliens. *Id.* at 18, 21. The court's opinion further explained that "Parolees, although they are physically present in the United States, are treated as if they were at the border seeking admission. . . . [Thus, as] arriving aliens, parolees are subject to removal proceedings[] 'if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted . . . .' 8 U.S.C. § 1225(b)(2)(A)." *Id.* at 16.


"The Attorney General defend[ed] the regulation, arguing that 8 U.S.C. § 1255(a) expressly states that the decision to grant adjustment of status is subject to the Attorney General's discretion and that the regulation is no more than a valid exercise of that discretion." *Id.* at 21. The First Circuit disagreed and held "that the regulation is contrary to the language and intent of the statute, 8 U.S.C. § 1255(a)." *Id.* at 9. Significantly, the court reasoned:

> The mere fact that a statute gives the Attorney General discretion as to whether to grant relief after application does not by itself give the Attorney General the discretion to define eligibility for such relief. . . . [T]he statute is not silent – it defines persons who have parole status as

> immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

*Succar*, 394 F.3d at 24.

[11]In 1996, "Congress . . . eliminated deportation and exclusion proceedings and replaced them with removal proceedings . . . ." *Id.* at 13.

eligible for adjustment of status and does not carve out an exception for parolees who are in removal proceedings.

. . . .

The statutory scheme reflects Congress's careful balancing of the country's security needs against the national interests Congress wished to advance through adjustment of status proceedings. The regulation upsets the balance Congress created.

Checking our construction of the statute against the legislative history of section 1255, we find the regulation to be inconsistent with the intent expressed in the statute. In 1960, when Congress included paroled aliens as aliens who are eligible for adjustment of status relief through section 1255, it did so to solve certain problems . . . . The effect of the regulation is to re-institute the problems Congress wished to solve. Further, until the 1997 promulgation of the regulation, the Attorney General had consistently interpreted section 1255 in a manner consistent with the statute and the legislative history and inconsistent with the 1997 regulation.

*Id.* at 10.

[B]ecause eligibility is explicit in this statute, the Attorney General cannot categorically refuse to exercise discretion favorably for classes deemed eligible by the statute.

*Id.* at 29 n.28.

*Succar* is good authority to grant relief to Geach. Rather than follow *Succar*, the majority in this case follows the reasoning of *Mouelle v. Gonzales*, 416 F.3d 923, 927-30 (8th Cir. 2005), which expressly disagreed with *Succar*. Confronted with a similar question as the First Circuit, a majority in *Mouelle* concluded that the Attorney General's discretion included the authority to make classes of aliens ineligible even if they are eligible under the statutory criteria. *See id.* at 929. ("If the Attorney

General decided that arriving aliens in removal proceedings will not be given adjustment-of-status relief (as she clearly did in promulgating this rule), and if that decision does not contravene the statute (as we conclude it does not), then it makes little sense to invalidate this regulation simply because it speaks in terms of eligibility."). "While Congress surely did speak to eligibility in the statute, it left the question whether adjustment-of-status relief should be granted to the Attorney General's discretion. . . . Administrators vested with such discretion may exercise that discretion by rule or on a case-by-case basis." *Id.* at 928. Judge Bye dissented in *Mouelle* "for the reasons articulated in *Succar* . . . ." *Id.* at 931.

Since the *Mouelle* decision, two other circuits have considered a similar issue. In *Bona v. Gonzales*, 425 F.3d 663, 668 (9th Cir. 2005), the Ninth Circuit "agree[d] with the analysis and holding of *Succar*[, stating] that because the 'regulation redefines certain aliens as ineligible to apply for adjustment of status . . . whom a statute, 8 U.S.C. § 1255(a), defines as eligible to apply[,]' the regulation is invalid." (quoting *Succar*, 394 F.3d at 9). "[W]e agree with the First Circuit that Congress has spoken to the precise issue of who is eligible to apply for adjustment of status and that 8 C.F.R. § 245.1(c)(8) is directly contrary to this Congressional determination." *Id.* at 670-71. "[W]e find the reasoning of *Succar* more persuasive and therefore reject the approach taken by the *Mouelle* court." *Id.* at 668 n.6.

The Third Circuit also reached the conclusion that the regulation is contrary to the statute, but on the ground that "the regulation is not based on a permissible statutory reading." *Zheng v. Gonzales*, 422 F.3d 98, 103, 119-20 (3d Cir. 2005).

> We concur with the government that the statute grants the Attorney General broad discretion to issue regulations, and that this discretion may include some power to regulate eligibility to adjust status. But the Attorney General's power is not unlimited, and must be exercised consistently with the intent of the statute. Because the statute allows paroled aliens to apply for adjustment of status, whereas the regulation

forecloses this statutory eligibility, the regulation is not based on a permissible statutory reading.

*Id.*

The background in *Mouelle* is quite different than that in the present case. The Mouelles overstayed their nonimmigrant visas. 416 F.3d at 924. The Mouelles later filed an application for asylum and withholding of removal, then left the United States on advance parole and did not have proper documents to reenter the United States. *Id.* at 924-25. The INS commenced removal proceedings following their return to this country. *Id.* The immigration judge denied the Mouelles' claims for asylum and withholding of removal, and the BIA affirmed. *Id.* The Mouelles then sought to reopen their removal proceedings and remand to the immigration judge so that they might apply for adjustment of status, which the BIA denied. *Id.* at 926. On appeal to this court, the Mouelles, among other things, argued that the BIA improperly denied their motion to reopen because the BIA determined they were considered arriving aliens. *Id.* at 926-27. The court noted that 8 C.F.R. § 1245.1(c)(8) made ineligible for adjustment of status "[a]ny arriving alien who is in removal proceedings pursuant to . . . section 240 of the Act [8 U.S.C. § 1229a]." *Id.* at 927. The court asserted that, because the statute granted full discretion to the Attorney General to grant or deny relief, the Attorney General could by regulation deny relief by rule, as well as case-by-case adjustment. *Id.* at 928-30. However, *Mouelle* is different on its facts and does not interpret the same statute and regulation as in the present case. Thus, if its reasoning is subject to question, its rational need not bind this panel.

The advance parole regulation, 8 C.F.R. § 245.2(a)(4)(ii), is contrary to the suspension of deportation statute, 8 U.S.C. § 1254. Section 1254 shows Congress's intent that aliens would not become ineligible for suspension of deportation based on "brief, casual, and innocent" trips abroad. To be eligible under the suspension of deportation statute, an alien must "ha[ve] been physically present in the United States

for a continuous period of not less than seven years immediately preceding the date of such application . . . ." § 1254(a). The Supreme Court decided in *INS v. Phinpathya*, 464 U.S. 183, 196 (1984), that any travel abroad during the seven-year period would make an alien ineligible for suspension of deportation. Congress responded, amending the statute to add: "An alien shall not be considered to have failed to maintain continuous physical presence in the United States . . . if the absence from the United States was brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence." § 1254(b)(2). The legislative history to the amendment also evinces Congress's intent. *See* H.R. Rep. No. 99-682(I), at 78, *reprinted in* 1986 U.S.C.C.A.N. 5649, 5682 ("The Committee Amendment relaxes the recent Supreme Court interpretation with respect to the seven year 'continuous physical' residence requirement to qualify for suspension of deportation . . . . That decision [*INS v. Phinpathya*, 464 U.S. 183 (1984)] held that any departure from the U.S. during the seven year period was interruptive of the residence requirement, thus making the alien ineligible for relief. This Amendment relaxes the residence requirement in the case of a 'brief, casual, and innocent' departure from the U.S."). Further, the suspension of deportation statute reveals a carefully drafted legislative scheme consisting of specific eligibility criteria and exceptions to those criteria.[12]

---

[12]Section 1254 read:

(a) Adjustment of status for permanent residence; contents

As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien (other than an alien described in section 1251(a)(4)(D) of this title) who applies to the Attorney General for suspension of deportation and– (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character;

Congress did not give the Attorney General the discretion to undo this scheme and the criteria determining eligibility.

The majority concedes the regulation would directly contravene § 1254 if it "den[ied] Geach an opportunity to apply for suspension of deportation merely because of his brief trips abroad . . . ." Slip Op. at 6. In the majority's view, however, the advance parole regulation is permissible because it "granted Geach the

benefit of making those trips without abandoning his application for adjustment of status to permanent resident . . . ." *Id.*

I disagree with this analysis. In my view, the advance parole regulation made Geach ineligible for suspension of deportation based on his brief, casual, and innocent trips to England. Congress, in amending the suspension statute, intended that travel of this character would not make an alien ineligible for relief. Geach traveled using

---

and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence;
(2) is deportable under paragraph (2), (3), or (4) of section 1251(a) of this title; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves . . . .

. . . .

(b) . . . (2) An alien shall not be considered to have failed to maintain continuous physical presence in the United States under paragraphs (1) and (2) of subsection (a) if the absence from the United States was brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence.

advance parole and the regulation placed him in exclusion proceedings on rejection of his adjustment application.  See Slip Op. at 5.  Alternatively, if Geach had traveled without advance parole and presented himself for inspection on his return from England, he still would have been placed in exclusion proceedings.  See Slip Op. at 8.  Thus, the regulation assured that the only way Geach could preserve his right to a suspension of deportation hearing was if he did not visit his parents during the eight years his adjustment application remained pending before the INS.

No individual discretion exists as to those aliens who have traveled abroad under advance parole, such as Geach.  The advance parole regulation frustrates the purpose of the suspension of deportation statute to alleviate the extreme hardships that can be created by deporting an alien whose family and whole life is here in the United States.  The regulation also frustrates the intent of Congress that an alien could take a brief, casual, and innocent trip abroad and remain eligible for suspension of deportation.

I note that the regulation could have been written to avoid this result.  Under a prior version of the advance parole regulation, the Fourth Circuit concluded that an alien returning under advance parole should have been placed in deportation proceedings after his return to this country and entitled to a suspension of deportation hearing.  *Joshi v. INS*, 720 F.2d 799, 803-04 (4th Cir. 1983).  The Fourth Circuit also explained that the parole statute, 8 U.S.C. § 1182(d)(5), which requires that an alien admitted under parole leaves his legal status at the border and upon which the INS conceived advanced parole, was intended "to allow the applicant entry 'for emergent reasons or for reasons deemed strictly in the public interest[]' . . . [and] does not purport to deal with authorization for foreign travel or with readmittance to the country to resume prosecution of a pending motion."  *Id.* at 803-04.

I would hold the advance parole regulation, 8 C.F.R. § 245.2(a)(4)(ii), invalid in this case as inconsistent with the suspension of deportation statute, 8 U.S.C. § 1254.

*See Succar v. Ashcroft*, 394 F.3d 8, 9-10, 36 (1st Cir. 2005); *Bona v. Gonzales*, 425 F.3d 663, 668 (9th Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98, 103, 119-20 (3d Cir. 2005).  Accordingly, I dissent.

_____