MANION, Circuit Judge,
dissenting.
Today the court remands this case “to the district court for the issuance of a mandamus commanding the Attorney General to take whatever steps are necessary to enable the plaintiff to reenter the United States.... ” Opinion at 665. This directive mirrors the relief the district court granted Samirah more than seven years ago: “Defendants must issue, or arrange for the issuance of, any and all documents necessary to permit Sabri Samirah to enter the United States on or before March 28, 2003.” In Samirah v. O’Connell, 335 F.3d 545 (7th Cir.2003) (“Samirah I”), this court interpreted the district court’s directive as an order reinstating Samirah’s advance parole. And because the ordering of the reinstatement of advance parole is beyond this court’s jurisdiction, Samirah I concluded that “[sjeetion 1252(a)(2)(B)(ii) bars jurisdiction over the rest of Samirah’s action.” Samirah, 335 F.3d at 552 (emphasis added). “The rest of Samirah’s action” means exactly that — the rest of Samirah’s action — which is why Samirah I “reversed” the district court’s decision, but did not remand the case to the district court for further proceedings. Id. at 552. Because Samirah I resolved this case in its entirety, I respectfully dissent.
Samirah himself recognized that Samirah I barred all of his claims, stating as much in his petition for rehearing en banc filed with this court and his petition for certiorari to the Supreme Court. This court denied Samirah’s petition for rehearing. And the Supreme Court denied Samirah certiorari. See Samirah v. Ash *666 croft, 541 U.S. 1085, 124 S.Ct. 2811, 159 L.Ed.2d 246 (2004). Once this court and the Supreme Court denied Samirah’s petitions for review, Samirah I became final.[1]
Nonetheless, the court today concludes that Samirah I is not dispositive because “the issues presented to us have changed,” opinion at 654, and “the relief sought in the present appeal (mandamus) is different from that sought unsuccessfully in the pri- or one (habeas corpus).” Opinion at 654. But not only is the relief sought the same, see supra at 27 (and Samirah did seek relief through both habeas corpus and mandamus in Samirah I), “[t]he issues presented to us” also have not changed. In both Samirah I and in this appeal, Samirah argued the same statutory and constitutional theories for relief, claiming jurisdiction then, as well as now, based on, among other grounds, the mandamus statute. The only issue that is new is the one the court has presented based on 8 C.F.R. § 212.5(e)(2)®. Samirah did not rely on § 212.5(e)(2)® in Samirah I — he did not even cite that regulation in his appellate brief. And because he does not rely on that regulation in this current appeal,[2] the government has not had an opportunity to address the issues presented in the court’s holding.
There is a good reason not to rely on § 212.5(e)(2)® — that section does not apply to Samirah’s situation. Section 212.5(e)(2)® states that “parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.” 8 C.F.R. § 212.5(e)(2)®. But Samirah was never granted parole in the first place so obviously it could not be terminated. Samirah received advance parole and advance parole is not the same as parole.
The Board of Immigration Appeals (“BIA”) explained this distinction in its en banc decision in Matter of G-A-C-, 22 I. & N. Dec. 83, 88 n. 3 (BIA 1998) (en banc): “The term ‘advance parole’ is something of a misnomer, and this phrasing may cause some confusion. An alien in the United States can request an advance authorization of parole. If the request is approved, the alien is not at that point ‘paroled.’ ” The BIA then stated that “[t]his is a distinction of some significance,” id., citing Barney v. Rogers, 83 F.3d 318 (9th Cir.1996). In Barney, the Ninth Circuit explained that “[ajlthough Petitioner received advance parole — a promise of parole upon her return — while she was an illegal overstay, she was not ‘paroled’ until she returned to the United States from Nigeria.” Id. at 321. Thus, the court explained, “‘at the time of parole,’ as distinguished from the time of advance parole, the petitioner was an excludable alien like all aliens who seek admission to the United States at designated ports of entry.” Id. The Barney court then concluded: “In other words, the advance parole gave Petitioner the right to return for the purpose of completing her Adjustment Application; it did not ‘freeze’ her status as an illegal overstay.” Id. (In this case, though, Samirah’s advance parole was revoked, so there was no right to return.) Similarly, the Second Circuit has distinguished advance parole from parole, stating: “ ‘Advance parole’ is the determina *667 tion of an appropriate DHS officer that DHS should agree to the exercise of the parole authority under Section 212(d)(5)(A) of the Act before the alien’s actual arrival at a port-of-entry. The actual decision to parole, however, is made at the port-of-entry.” See Ibragimov v. Gonzales, 476 F.3d 125, 136 n. 15 (2d Cir.2007) (quoting Eligibility of Arriving Aliens in Removal Proceedings, 71 Fed.Reg. at 27,586 n. 1 (May 12, 2006)). Moreover, as the Ibragimov court explained: “a decision authorizing advance parole does not preclude denying parole when the alien actually arrives at a port-of-entry, should DHS determine that parole is no longer warranted.”[3] Id.
At oral argument, Samirah’s attorney stated that the government had always maintained that “Samirah never had parole” and that “advance parole isn’t actually parole.” Significantly, Samirah’s attorney then added: “And we agree with that.” In fact, in his petition for rehearing to this court in Samirah I, Samirah stated that the Board’s interpretation of advance parole, as not itself a “parole,” receives Chevron deference. Petition for Rehearing at 4, n. 3. Samirah then added: “In any event, the revocation of advance parole authorization is not the revocation of parole itself.” Id.
Because advance parole is not parole, I do not believe § 212.5(e)(2)® provides a basis for the relief Samirah seeks, namely re-entry into the United States.[4] But assuming § 212.5(e)(2)(i) applies to the revocation of Samirah’s advance parole, I also disagree with the court’s conclusion that Samirah’s pre-advance-parole status was as “an applicant for adjustment of status,” Opinion at 660, and its holding that to regain that status, Samirah must be allowed to return to the United States. Being an applicant for the adjustment of status is not an immigration status — if it were, there would be no need to assimilate such applicants to the status of an applicant for entry. Palmer v. INS, 4 F.3d 482, 484 (7th Cir.1993). And if we are going to treat “status” as something other than a recognized immigration status, then Samirah’s real status was that of an alien abroad with a grant of advance parole. And returning him to that status would simply require mandating that the government reinstate Samirah’s advance parole.
Instead, though, the court’s mandate to the district court requires “commanding the Attorney General to take whatever steps are necessary to enable the plaintiff to reenter the United States.... ” Opinion at 665. This directive is not just indefinite, but beyond this court’s power. The “several means of compliance” the court suggests as options are: (1) issue Samirah another I-512L form, Opinion at 656; (2) issue Samirah a visa, Opinion at 663; (3) *668 parole Samirah, Opinion at 663; or (4) just admit Samirah into the United States without documentation, Opinion at 656, 663. (1) is reinstatement of advance parole, which is beyond our power to order. See Samirah I, 335 F.3d at 552. (2) is barred by the consular nonreviewability doctrine and the fact that the State Department is not a party. (3) is a purely discretionary decision for the Attorney General, which this court lacks jurisdiction to order, and in any event would not provide a means for Samirah to reach a port-of-entry — as he is still in Jordan and lacks a travel document to get to a port-of-entry.[5] And (4) violates the INA. 8 U.S.C. § 1182(7)(A)(i).[6] What the court cannot order directly, it cannot order indirectly through a “whatever steps are necessary” mandate. But if the court insists on forcing the government to allow Samirah back into the United States, it should just straightforwardly mandate reinstatement of his advance parole. Although I do not agree that we have jurisdiction to do so, that would be the most efficient use of mandamus.

. The fact that Samirah I was on appeal from the grant of a preliminary injunction has no bearing on the finality of this court’s holding that the district court lacked jurisdiction "over the rest of Samirah's action.” Samirah, 335 F.3d at 552.

. In fact, Samirah's only citation to § 212.5(e)(2)(i) in his current appeal comes at page 10 of his appellee brief, where he summarizes the government's position that advance parole is not parole — a position with which he agreed at oral argument.

. While dicta in a footnote in Succar v. Ashcroft, 394 F.3d 8, 15 n. 7 (1st Cir.2005), does say that advance parole is a type of parole, that statement is inconsistent with the Board’s view in G-A-C-, to which we owe deference, as well as the Ninth Circuit’s decision in Barney, and the Second Circuit's decision in Ibragimov.

. Because § 212.5(e)(2)(i) does not apply to advance parole and provides no right to the court’s relief, it cannot form the basis for mandamus jurisdiction. See Iddir v. INS, 301 F.3d 492, 499 (7th Cir.2002) (“Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available.”). Thus, Samirah I is entirely consistent with Iddir, and there was no need to circulate Samirah I to the entire court pursuant to Rule 40(e). Samirah I, though, was circulated 40(e) because of the conflict it created with the Ninth Circuit concerning the availability of habeas corpus. Samirah v. O’Connell, 335 F.3d 545, 550 n. 6. (7th Cir.2003).

. Directing the government to grant Samirah parole would also provide Samirah with greater rights than he held as an advance parolee, because someone granted advance parole can still be denied parole at the border. See Ibragimov v. Gonzales, 476 F.3d 125, 136 n. 15 (2d Cir.2007) (quoting Eligibility of Arriving Aliens in Removal Proceedings, 71 Fed.Reg. at 27,586 n. 1 (May 12, 2006)).

. It would also seem that the "whatever steps are necessary” mandate would require the government to remove Samirah from a no-fly list, if he is indeed on such a list, as the court assumes. Opinion at 656. The propriety of including Samirah on a no-fly list, though, has never been litigated and should not be unconditionally ordered by the court today.