David IBRAGIMOV, Petitioner,

v.

Alberto R. GONZALES, Attorney
General, Respondent.

Docket No. 05–4771–ag.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 6, 2006.

Decided: Jan. 25, 2007.

Michael P. Diraimondo, Diraimondo & Masi, LLP, Melville, NY, for Petitioner.

Debra Prillaman, Assistant United States Attorney (Chuck Rosenberg, United States Attorney, on the brief), United States Attorney's Office for the Eastern District of Virginia, Richmond, VA, for Respondent.

Before FEINBERG, CABRANES, and SACK, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

We consider here the claims of a petitioner who all but concedes that he has no legal right to remain in the United States, but who argues that his removal proceedings were invalid because the charges

brought against him did not reflect his proper status, which he claims was *merely* that of an *illegal* "visa overstay."[1] In particular, we consider whether petitioner, who remained in the United States after the expiration of his B–2 visa,[2] and subsequently left and returned to the country pursuant to the government's grant of "advance parole"[3] while his adjustment-of-status application[4] was pending, was improperly charged with removal as an "arriving alien"[5] and an "applicant for admission"[6] once his adjustment-of-status application was denied. Petitioner argues that because he traveled abroad with the government's express authorization, he should have retained his prior status as a visa overstay and been subject to a charge of deportability (rather than inadmissability).[7] He therefore contends that the IJ erred in denying his motion to terminate his removal proceedings and in failing to afford him the enhanced protections that apply to visa overstays, as opposed to arriving aliens.

We hold that the government did not err in treating petitioner as an arriving alien and an applicant for admission, or in denying his motion to terminate his removal proceedings. We further hold, pursuant to *Kambolli v. Gonzales*, 449 F.3d 454 (2d Cir.2006), that we lack jurisdiction to consider petitioner's additional claim that the Board of Immigration Appeals ("BIA") erred by having his appeal decided by a single-member panel rather than referring it to a three-member panel for decision. Finally, assuming without deciding that we have jurisdiction to review the propriety of the one-judge panel's issuance of a summary affirmance instead of a written opinion, we conclude that it was not error to do so here under the governing BIA regulations.

## I. Background

Petitioner David Ibragimov, a native of Uzbekiztan and citizen of Israel, entered

---

1. "Visa overstay" is a term used in the immigration statutes to refer to an alien who has entered the country on a lawful visa but remained in the United States beyond the period authorized by the government. *See, e.g.*, 8 U.S.C. § 1202(g) (providing with respect to "visa overstays," *i.e.*, "alien[s] who ha[ve] been admitted ... and remained in the United States beyond the period of stay authorized by the Attorney General," that their "[nonimmigrant] visa shall be void beginning after the conclusion of such period of stay.").

2. A B–2 visa, often referred to as a "tourist" visa, may be issued to a "visitor for pleasure" so that such a person may remain legally in the United States for a temporary period. The initial period of authorization of a B–2 visa may not exceed one year, but may be extended in increments of six months. *See* 8 C.F.R. § 214.2(b)(1).

3. Advance parole is a practice whereby the government agrees, before an alien arrives at a port of entry, to allow the alien's physical

entry to the United States once he arrives (and while his immigration status is being resolved by immigration officials). *See* pp. 131–32, *post*.

4. A temporary visitor to the United States, *i.e.*, a "nonimmigrant," may apply for an "adjustment of status" to that of a permanent legal resident pursuant to the specific procedures and conditions outlined in the immigration statutes. *See, e.g.*, 8 U.S.C. § 1255.

5. "Arriving alien" is a term used in the immigration laws to described aliens who are considered, for legal purposes, to be arriving at a port of entry and who have not been formally admitted to the United States. *See* p. 131, *post*.

6. *See* p. 131, *post*.

7. An alien present in the United States pursuant to a prior "admission" is subject to a charge of "deportability." *See* pp. 130–31, *post*. An alien present in the United States who has not been formally "admitted" is subject to a charge of "inadmissibility." *See id.*

the United States on a valid six-month B–2 visa on September 20, 1992. Petitioner over-stayed his visa—*i.e.,* he remained in the United States after the expiration of the visa that permitted him to enter the United States in the first place; that visa expired on March 19, 1993. On November 8, 1995, while still residing in the United States, he married a United States citizen. Petitioner's wife subsequently filed a Petition for Alien Relative ("Form I–130") on his behalf. In conjunction with the Petition for Alien Relative, petitioner filed an Application for Adjustment of Status ("Form I–485").

While these applications were pending before the Immigration and Naturalization Service ("INS")[8], petitioner applied for "advance parole," *i.e.,* permission to leave and return to the United States with the government's prior authorization pending resolution of his immigration status. The INS granted advance parole on July 29, 1996 by issuing a "Form I–512." The Form I–512 contained a warning which stated: "WARNING: pursuant to 8 C.F.R. § 245.2(a)(4) if your application for adjustment of status is denied, you will be subject to exclusion proceedings."[9] Pursuant to this advance parole authorization, and while his adjustment of status application was pending, petitioner left the United

States and was "paroled back" into the country several times.

Petitioner's most recent return to the United States pursuant to the government's grant of advance parole occurred on or about July 24, 1998. Thereafter, on October 19, 1999, the INS denied petitioner's visa petition and his Application for Adjustment of Status. On July 23, 2001, the INS revoked petitioner's parole on the ground that its purpose "ha[d] been accomplished, and there [was] no emergent, humanitarian, or public interest reasons which warrant[ed]" his continued presence in the United States.

On October 1, 2001, the INS issued a Notice to Appear ("NTA") for removal proceedings before an immigration judge. The NTA charged that petitioner was inadmissible pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I).[10] In particular, the NTA alleged that petitioner was a noncitizen who (1) "applied for admission to enter the United States ... on or about ... July 24, 1998 [the date he last returned to the United States]"; (2) applied for admission as an intending immigrant; and (3) was "not in possession of a valid, unexpired immigrant visa, reentry permit, border crossing card, or other valid entry

---

**8.** In 2002, responsibility for enforcing the immigration laws was transferred to the newly-created Bureau of Immigration and Customs Enforcement ("ICE") within the new Department of Homeland Security ("DHS"). *See Thapa v. Gonzales,* 460 F.3d 323, 325 n. 1(2d Cir.2006). To avoid confusion, we refer to the Government's immigration enforcement authority as the INS throughout this opinion.

**9.** "Exclusion" is a term previously used in the immigration statutes to refer to proceedings held for aliens who were not in the United States pursuant to a previous legal "entry." Such aliens are now placed in "removal" proceedings and are subject to a charge of

"inadmissability," as opposed to "excludability." *See* pp. 133–34, *post;* 8 U.S.C. § 1229a(a)(2).

**10.** 8 U.S.C. § 1182(a)(7)(A)(i) provides, in pertinent part:

"Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission—
(I) who is not in possession of a valid unexpired visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document ... is inadmissible."

document required by the Immigration and Nationality Act."

Removal proceedings were held before Immigration Judge ("IJ") Patricia J. Rohan between February 2002 and February 2004. On or about May 12, 2003, petitioner filed a motion to terminate his removal proceedings. In his brief in support of his motion to terminate, petitioner argued, *inter alia*, that he was not an arriving alien (*i.e.*, an applicant for admission) as alleged in the NTA because he had left and been "paroled back" into the country with the government's advance authorization. The INS opposed the motion, arguing that under applicable INS regulations petitioner was an "arriving alien."

On February 26, 2004, the IJ denied petitioner's motion to terminate the removal proceedings. The IJ stated that petitioner had not "established as a matter of law that the definition of an arriving alien does not apply to him." The IJ concluded that "[the definition of an arriving alien] clearly does apply to [the petitioner] who most recently returned to the United States and was paroled into the United States for the purpose of completing his application for adjustment of his status." Pursuant to this determination, the IJ ordered petitioner removed from the United States on the grounds that he had not shown he was eligible for admission to the country.

Petitioner timely appealed the IJ's decision to the Board of Immigration Appeals. On August 3, 2005, the BIA affirmed without opinion the IJ's removal order. *See In re David Ibragimov*, No A 74 836 729 (BIA Aug. 3, 2005), *aff'g* No A 74 836 729 (Immig. Ct. N.Y. City Feb. 26, 2004). Petitioner timely seeks review of the BIA's decision.

On appeal, petitioner raises substantially the same argument that he raised in support of his motion to terminate before the IJ—namely, that he was not an "arriving alien" subject to a determination as to admissibility, but was, rather, a "visa overstay" subject to a determination as to deportability. He therefore urges this Court to hold that the IJ's denial of his motion to terminate was error.

Petitioner also argues on appeal that the BIA violated his constitutional rights to due process of law and to equal protection of the laws when it affirmed the IJ's decision by the action of one member of the BIA and without the issuance of a published opinion.

## II. Governing Law

### A. Burden of Proof in Removal Proceedings

Following Congress's passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009, ("IIRIRA"), there is a single category of immigration proceedings for adjudicating whether an alien is legally present in the United States—namely, "removal proceedings." [11] The

---

**11.** Prior to 1996, the INA maintained two separate types of proceedings to adjudicate the legal status of aliens—"deportation" proceedings and "exclusion" proceedings. *See Henderson v. INS*, 157 F.3d 106, 111 n. 5 (2d Cir.1998). "Deportation" proceedings were provided to aliens who had formally "entered" the United States, while "exclusion" proceedings were provided to aliens who were seeking entry to the United States and

therefore were constructively deemed to be at the border. *Id.; see also Landon v. Plasencia*, 459 U.S. 21, 25, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); *Patel v. McElroy*, 143 F.3d 56, 60 (2d Cir.1998). The IIRIRA combined immigration proceedings into a single category called "removal proceedings" and replaced the definition of an "entry" with that of an "admission." *See Henderson*, 157 F.3d at 111 n. 5. *Compare* 8 U.S.C. § 1101(a)(13) (1994), *with*

burden of proof in removal proceedings differs, however, depending on an alien's immigration status at the time his proceedings are commenced. In particular, an individual who is an "applicant for admission" to the United States at the time of his removal proceeding is deemed to be legally at the border and bears the burden of establishing that he "is clearly and beyond doubt entitled to be admitted and is not inadmissible ... or ... by clear and convincing evidence, that [he] is lawfully present in the United States pursuant to a prior admission." 8 U.S.C. § 1229a(c)(2).

By contrast, in a removal proceeding commenced after an alien has been formally "admitted" to the country, "the Service [*i.e.*, the government] has the burden of establishing by clear, convincing evidence that ... the alien is deportable," 8 U.S.C. § 1229a(c)(3)(A).

█ Accordingly, whether an alien's presence in the United States is pursuant to a prior "admission" is the decisive factor in determining whether the alien or the government bears the burden of proof in removal proceedings.

## B. Charges in Removal Proceedings

An alien's prior "admission" *vel non* is also dispositive in determining which particular "charge" of removability is appropriate to his removal proceedings. An alien who is "in and admitted to the United States," is considered potentially *deportable* and is therefore subject to a charge of deportability. 8 U.S.C. § 1227(a); *id.* § 1229a(a). By contrast, an alien who is not in the United States pursuant to a prior admission is considered potentially *inadmissible* and is therefore subject to a charge of "inadmissibility," *See* 8 U.S.C.

8 U.S.C. § 1101(a)(13)(2006). As explained, *post*, p. 131, "deportability" and "deportation" remain terms under the immigration laws, but now refer to a particular charge that

1229a(e)(2) (explaining distinction between aliens removable on the basis of inadmissibility and aliens removable on a basis of deportability).

## C. Admission, Entry, and Arriving Aliens

The INA defines the "admission" of an alien as follows: "The terms 'admission' and 'admitted' mean, with respect to an alien, *the lawful entry* of the alien into the United States after inspection and authorization by an immigration officer." INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Accordingly, an alien will not be considered admitted under the immigration laws (and therefore will bear the burden of proving his admissibility) unless his presence in the country is pursuant to an "entry" that was both "lawful" and "authorized" by an immigration officer. *Id.*

Aliens who appear at a port-of-entry seeking to enter the United States but who have not been formally "admitted" are considered "arriving aliens" and "applicants for admission." *See* 8 C.F.R. § 1.1(q) ("[A]rriving alien means an applicant for admission coming or attempting to come to the United States at a port-of-entry....").

## D. Parole

█ "Parole" is an administrative practice whereby the government allows an arriving alien who has come to a port-of-entry without a valid entry document to be temporarily released from detention and to remain in the United States pending review of the his immigration status. The statute governing parole states:

the government may bring against certain aliens who are placed in removal proceedings after having been formally admitted to the country.

The Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States....

8 U.S.C. § 1182(d)(5)(A). Such parole does not constitute an admission, however. *See id.*

■ "Advance parole" is a practice whereby the government decides in advance of an alien's arrival that the alien will be paroled into the United States when he arrives at a port-of-entry. *See, e.g., Succar v. Ashcroft,* 394 F.3d 8, 15 n. 7 (1 st Cir.2005). Advance parole is not explicitly contemplated by the statute governing parole, but is permitted by 8 C.F.R. § 212.5(f), which provides: "Advance authorization. When parole is authorized for an alien who will travel to the United States without a visa, the alien shall be issued form I–512." 8 C.F.R. § 212.5(f). Advance parole is often granted to aliens residing in the United States who have a need to travel abroad, but whose immigration status would not afford them a right to legal admission upon their return. *See, e.g., Succar,* 394 F.3d at 15, n. 7 (explaining the common use of advance parole to allow the return to the country of a resident alien "who has an unexpected need to travel abroad and whose conditions of stay do not otherwise allow for readmission ....."); *see also* 71 Fed.Reg. 27,585, 27,586 n. 1 (May 12, 2006) ("One long-standing use of advance parole has been to provide a means for applicants for adjustment of status to be able to leave the country briefly and return without abandoning their applicants for adjustment."). After

the purpose of the parole has been served, the alien's status reverts to that which he had at the time he was inspected and paroled into the country, and "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A); *see* Eligibility of Arriving Aliens in Removal Proceedings To Apply for Adjustment of Status, 8 C.F.R. § 212.5(e)(1)-(2).[12]

## III. Standard of Review

■ Where, as here, the BIA affirms the decision of the IJ without opinion, we review the IJ's decision as the final agency determination. *See Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005). We review the IJ's legal conclusions *de novo. Zhang Jian Xie v. INS,* 434 F.3d 136, 139 (2d Cir.2006).

## IV. Discussion

### A. Whether the IJ Erred in Denying Petitioner's Motion To Terminate Removal Proceedings Based on The Conclusion That Petitioner Was an Arriving Alien

■ We conclude here that under valid and unambiguous INS regulations governing the grant of advance parole, petitioner was properly treated as an "arriving alien" and an "applicant for admission" in removal proceedings once his adjustment-of-status application was denied. As explained below, INS regulations manifest the agency's clear intent to treat parolees, including advance parolees, as "arriving aliens" subject to a determination of inadmissibility. Once he departed from the United States, petitioner would have had no right to return to the United States absent the

12. The regulations governing grant of advance parole are discussed at pp. 132–33, *post.*

government's grant of advance parole. Therefore, when petitioner returned and was paroled into the United States in July 1998, he was entitled only to the rights of an advance parolee (namely, the right to physically enter the country and complete his adjustment-of-status application as an "arriving alien") and was not entitled to the enhanced protections that would have been available to a visa overstay who never left the country.

The gravamen of petitioner's challenge to the IJ's denial of his motion to terminate his removal proceedings is that he was not an "arriving alien" at the time his removal proceedings were commenced because he had already "arrived" when the government issued its Notice to Appear. In particular, petitioner argues that (1) his most recent return to the United States pursuant to the government's grant of advance parole was an "entry" or "re-entry" to the country, (2) the government's advance parole authorization form was a valid entry document, and (3) the subsequent denial of his adjustment-of-status application did not revoke, *nunc pro tunc*, the government's "admission" of petitioner pursuant to its grant of advance parole. Petitioner therefore urges this Court to hold that he retained the status of a visa overstay that he held before leaving the United States.

Although petitioner's argument has some intuitive appeal, it is legally without merit for several reasons.

First, petitioner's argument that the IJ and the agency erred in treating him as an applicant for admission, rather than an admitted alien, directly contravenes the plain language of 8 C.F.R. § 245.2(a)(4)(B).[13] That regulation deals specifically with aliens who, like petitioner,

apply for adjustment of status and subsequently travel outside the United States pursuant to the government's grant of advance parole. It provides, in relevant part:

> The travel outside the United States by an applicant for adjustment [of status] who is not under exclusion, deportation, or removal proceedings shall not be deemed an abandonment of the application if he or she was previously granted advance parole for such absences, and was inspected and paroled upon returning to the United States. *If the adjustment of status of such individual is subsequently denied, he or she will be treated as an applicant for admission, and subject to the provisions of Section 212 and 235 of the [Immigration and Naturalization Act, 8 U.S.C. §§ 1182, 1225].*

8 C.F.R. § 245.2(a)(4)(B) (emphasis added). Petitioner does not dispute that before his most recent trip abroad, he was "an applicant for adjustment [of status] who [was] not under exclusion, deportation, or removal proceedings." *Id.* Nor does he dispute that he (1) traveled outside the United States having been "previously granted advance parole," (2) "was inspected and paroled upon returning" to the country, and (3) was "subsequently denied" his adjustment of status application. It therefore directly follows from the plain language of the regulation that petitioner should "be treated as an applicant for admission" to the United States. *Id.*

Second, petitioner's argument that he was not an "applicant for admission" because (1) his parole back into the United States constituted an "entry" or "admission," and because (2) the government's

---

13. Petitioner curiously does not challenge, much less address or acknowledge, this regu-

lation in his brief on appeal.

parole authorization form was a valid entry document, is undermined by the statute governing the grant of parole by immigration officials. Section 212(d)(5)(A) of the INA provides the Attorney General with discretion to parole into the United States certain aliens who apply for admission. 8 U.S.C. § 1182(d)(5)(A). The statute specifically states that "parole of [an] alien *shall not* be regarded as an admission of the alien" and that "when the purposes of such parole shall ... have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other *applicant for admission* to the United States." *Id.* (emphasis added); *see also* 8 U.S.C. § 1101(a)(13)(A) ("An alien who is paroled under section 212(d)(5) ... shall not be considered to have been admitted).

 The terms of this statute reflect the well-settled principle that Congress did not intend for parole of an alien to constitute an alien's legal entry or admission to the United States. *See Leng May Ma v. Barber,* 357 U.S. 185, 190, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958); *United States ex rel. Kordic v. Esperdy,* 386 F.2d 232, 235 (2d Cir.1967) ("A 'parolee,' even though physically in the country, is not regarded as having 'entered' [the country].... If he is required to leave the United States, he is being excluded, not expelled."). Instead, parole is a means by which the government allows aliens who have arrived at a port-of-entry to temporarily remain in the United States pending the review and adjudication of their immigration status. Although paroled aliens physically enter the United States for a temporary period, they nevertheless remain constructively detained at the border, *i.e.* legally unadmitted, while their status is being resolved by immigration officials. *See Leng May Ma,*

357 U.S. at 191, 78 S.Ct. 1072 ("The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status, and to hold that petitioner's parole placed her legally 'within the United States' is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court."); *Fernandez–Roque v. Smith,* 734 F.2d 576, 578–79 & n. 2 (11 th Cir. 1984) (paroled aliens are considered detained at the border); *see also Wong Hing Fun v. Esperdy,* 335 F.2d 656, 657 (2d Cir.1964) (Marshall, *J.*) (same).

Petitioner argues that his case is distinguishable from those cases cited above because he was not seeking admission for the first time but was, rather, a "visa overstay" returning to the United States with the government's express permission. Petitioner's Br. at 10–11. He thus argues that the BIA exceeded its authority and contravened the purpose of the statute in treating him as an "applicant for admission." *Id.* This argument is unavailing. Neither the governing statute nor the INS's regulations provide any basis for the conclusion that a grant of advance parole warrants an exception to the well-settled principle that parole does not effect a legal entry or admission to the United States. Petitioner was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) and presents no argument that he was entitled to enter the United States on any other basis. We therefore find no reason why the statute's provision stating that "parole of [an] alien shall not be regarded as an admission," *id.,* should not be read to apply here.

Moreover, to interpret the statute otherwise and deem petitioner an "admitted" visa overstay would ignore the fact that the government's grant of advance parole merely constituted an agreement to allow

for petitioner's temporary *return* to the United States and to prevent the abandonment of his adjustment-of-status application. It did not constitute a promise to overlook all of the legal consequences of his *departure*. In particular, the government did not agree that petitioner would remain a visa overstay once he voluntarily departed the country. Because visa overstays sacrifice their status as overstays when they leave the country and are not admissible on the basis of their expired visas should they subsequently appear at a port-of-entry, *see* 8 U.S.C. § 1181(a)(7)(A)(i) (requiring "a valid *unexpired* visa" or other entry document for admission) (emphasis added), we reject petitioner's argument that he was entitled to treatment either as an "admitted" alien or as a "visa overstay" when he returned to the country pursuant to his advance parole.

Accordingly, the government's parole of petitioner back into the United States in July 1998 did not constitute a "re-admission," much less an "admission," that reversed the legal effects of his previous departure, nor did his parole document afford him "entry" to the United States. Petitioner left the United States with the government's assurance merely that he would be granted a temporary, *physical* presence in the country upon his return (for the sole purpose of completing his Adjustment of Status Application). Having been paroled into the country and denied an adjustment of status, petitioner cannot now bootstrap his latest parole into a formal, *legal* re-entry. *See Zheng Zheng v. Gonzales*, 422 F.3d 98, 111 (3d Cir.2005) (holding that "because [the petitioner] re-

entered with no legal status greater than that of a parolee, he is simply a paroled arriving alien").

Although petitioner additionally relies on 8 C.F.R. § 1.1(q) to suggest that the definition of an "arriving alien" does not apply to him, this reliance is misplaced. 8 C.F.R. § 1.1(q) defines an arriving alien as follows:

> The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry.... An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act, except that an alien who was paroled before April 1, 1997, or an alien who was granted advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States shall not be considered an arriving alien for purposes of [INA] section 235(b)(1)(A)(i).

8 C.F.R. § 1.1(q). Petitioner does not appear to dispute that at the time he returned to the United States in July 1998, and *before he was paroled back into the country*, he was an "applicant for admission coming or attempting to come into the United States at a port-of-entry," *id.*, and that the definition of an "arriving alien" therefore applied to him.[14] *Id.; see Matter of Oseiwusu*, 22 I & N Dec. 19, 19–20 (BIA 1998) (holding that aliens returning pursuant to a grant of advance parole are "arriving aliens"). Instead, petitioner argues that "[a]t the time the *Notice to Appear issued*," he had been paroled back

---

**14.** We note that the parole statute only provides the Department of Homeland Security Secretary with discretion to parole into the country "alien[s] *applying for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A). Accordingly, insofar as petitioner implicitly

concedes that the government's grant of his parole was a valid exercise of agency authority under 8 U.S.C. § 1182(d)(5)(A), he also necessarily concedes that he was an alien "applying for admission to the United States" at the time he was paroled in July 1998. *Id.*

into the country and was therefore no longer "seeking inspection to the United States" but, rather, had "already arrived" within the meaning of the regulation. Petitioner's Br. at 12–13 (emphasis added). He thus contends that "the termination of his advance parole status cannot undue [sic] the grant of advance parole *nunc pro tunc* and make [him] an arriving alien." *Id.* at 13. This argument is unavailing for two reasons.

■ First, petitioner's argument that he was no longer an "arriving alien" when the Notice to Appear issued ignores the regulation's command that "an arriving alien *remains such even if paroled* pursuant to [INA] section 212(d)(5)." 8 C.F.R. § 1.1(q) (emphasis added). The regulation carves out only two limited exceptions to this general principle, neither of which applies here. The first exception, for "aliens paroled before April 1, 1997," *id.*, does not apply because petitioner was most recently paroled in July of 1998—more than a full year after the latest date covered by the exception. The second exception, for "aliens who are granted advance parole," is rendered inapplicable to this particular petitioner by the exception's narrow specification that such aliens shall not be regarded as arriving aliens *"for purposes of* section 235(b)(1)(A)(i)." *Id.* Section 235(b)(1)(A)(i) of the INA is a statute that deals specifically with *expedited* removal proceedings. 8 U.S.C. § 1225(b)(1)(A)(i). As the government correctly asserts, the regulation thus "exempts an 'arriving alien'

who has been given advance parole from being put in expedited removal [proceedings]." Respondent's Br. at 28. Petitioner in the instant case was not "put in expedited removal [proceedings]"—he was afforded a regular, non-expedited hearing by immigration officials. Therefore, neither the expedited removal statute, nor the above-cited exception set forth in 8 C.F.R. § 1.1(q), applies to him.

■ Second, petitioner's argument that he was not an "arriving alien" at the time his Notice to Appear issued is further undermined by the terms of 8 C.F.R. § 212.5(e)(2)(i), which provides that upon termination of an alien's parole, the alien "shall be restored to the status that he or she had *at the time of parole.*" 8 C.F.R. § 212.5(e)(2)(i) (emphasis added). Contrary to petitioner's assertion in his brief, Petitioner's Br. at 12, the "time of parole" of an alien is not the time when the government provides advance authorization for the alien to be paroled upon his return to the United States. Rather, the "time of parole" occurs when the alien is actually paroled into the country by immigration officials at a port-of-entry. *See Barney v. Rogers,* 83 F.3d 318, 321 (9th Cir.1996) ("Although Petitioner received advance parole—a promise of parole upon her return—while she was an illegal overstay, she was not 'paroled' until she returned to the United States from [abroad].").[15] Accordingly, even if we accepted *arguendo* petitioner's argument that he had "ar-

---

15. The Secretary of Homeland Security and the Attorney General have recently emphasized, in an explanatory note to interim rules published in the Federal Register, that a grant of advance parole is not synonymous with the (subsequent) parole of the alien:

> 'Advance parole' is the determination of an appropriate DHS officer that DHS should agree to the exercise of the parole authority under Section 212(d)(5)(A) of the Act before the alien's actual arrival at a port-of-entry.

> *The actual decision to parole, however, is made at the port-of-entry.* Since any grant of parole may be revoked, 8 C.F.R. § 212.5(e), a decision authorizing advance parole does not preclude denying parole when the alien actually arrives at a port-of-entry, should DHS determine that parole is no longer warranted.

Eligibility of Arriving Aliens in Removal Proceedings, 71 Fed.Reg. at 27,586 (May 12, 2006) (emphasis added).

rived" in the United States on the date he returned from his most recent sojourn abroad,[16] upon denial of his adjustment of status application, his status reverted to that which he held at the time he was paroled into the United States in July 1998—namely, that of an "arriving alien" seeking admission at our borders. *See id.* (holding that "[a]t the time of parole, as distinguished from the time of advance parole, [a petitioner] was an excludable alien like all aliens who seek admission to the United States at designated ports of entry.").

 Thus, the statutory and regulatory framework governing administrative parole supports the IJ's and the BIA's conclusion that petitioner was an "arriving alien" properly subjected to a charge of inadmissibility. INS regulations manifest the agency's intent to treat "visa overstays" who return to the United States pursuant to a grant of advance parole, and who are subsequently denied an adjust-

ment of status, as "arriving aliens," *i.e.*, "applicants for admission." [17]

We note that the Court of Appeals for the Ninth Circuit has similarly concluded, in a case with facts substantially similar to those at bar, that advance parolees are not legally within the United States for immigration purposes (albeit under the pre-IIRIRA statutory scheme). In *Barney,* 83 F.3d at 318, a petitioner over-stayed her visa, and then left and returned to the United States pursuant to the government's grant of advance parole while her adjustment of status application was pending. *Id.* at 319–20. The government placed petitioner in *exclusion,* rather than *deportation,* proceedings once her application was denied. *Id.* at 320–21. Petitioner argued on appeal that she should retain the "visa overstay" immigration status she held prior to leaving the country. *Id.* The Ninth Circuit disagreed, holding that "advance parole gave petitioner the right to return for the purpose of completing her Adjustment Application; it did not 'freeze' her status as an illegal overstay." *Id.* at

---

**16.** We reject this argument for the reasons explained above.

**17.** Petitioner does not explicitly argue that the pertinent INS regulations reflect an impermissible interpretation of the parole statute under the well-known principles of *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Nevertheless, to the extent he implicitly raises such an argument by urging an interpretation of the statute that conflicts with the INS regulations discussed above, *see* Petitioner's Br. at 10–11, his argument is without merit.

Under *Chevron,* if a statute is clear on its face, we "must give effect to the unambiguously expressed intent of Congress." *Fulani v. FCC,* 49 F.3d 904, 910 (2d Cir.1995) (quoting *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778); *see also*

*Nolan v. Holmes,* 334 F.3d 189, 198 (2d Cir. 2003) (applying *Chevron* to review of INS regulation).

Applying the first step of *Chevron* analysis, we conclude (and petitioner concedes, *see* Petitioner's Br at 10), that the parole statute is silent on the question of what status should be accorded to *advance* parolees who have previously overstayed their visas. Applying the second step of our analysis, we conclude that the relevant INS regulations are "reasonable" and not "arbitrary, capricious, or manifestly contrary" to the intent of Congress, and therefore are entitled to the deference of the courts, *Chevron,* 467 U.S. 837 at 845, 104 S.Ct. 2778, 81 L.Ed.2d 694. In particular, the interpretation embraced by the INS's regulations—*i.e.,* that advance parolees remain arriving aliens even after they have re-entered the United States—fully accords with the statute's general command that parole does not afford an alien legal admission to the country. *See* 8 U.S.C. § 1182(d)(5)(A).

321.[18]

More recently, the Court of Appeals for the Third Circuit has similarly held, under the post-IIRIRA statutory scheme, that advance parolees are not "admitted" aliens for the purposes of their removal proceedings. In considering the legality of a regulation precluding parolees from applying for adjustment of status, the Court held that an alien who returned to the United States as an advance parolee was an "arriving alien" under the applicable statutes and regulations. *See Zheng*, 422 F.3d at 110–11. Likewise, the Court of Appeals for the Fifth Circuit has recently held, in an unpublished decision, that an alien who left and returned to the United States pursuant to a grant of advance parole was "by definition an arriving alien." *Diarra v. Gonzales*, 137 Fed.Appx. 627, 630 (5th Cir.2005).

We agree with our sister Circuits, and, for the reasons stated above, we hold that the IJ and the BIA did not err in treating petitioner as an "arriving alien" and an "applicant for admission" for the purposes of his removal proceedings. In particular, we hold that, by overstaying his visa, and then leaving the United States without a document entitling him to legal admission, petitioner sacrificed the status he would

have retained had he remained inside the country. His most recent trip abroad rendered him legally outside the borders of the United States and, upon his return, neither his parole back into the country nor the subsequent denial of his adjustment of status compelled the BIA to treat him as an "admitted" visa overstay. Accordingly, the IJ's denial of petitioner's motion to terminate removal proceedings was not erroneous.[19]

## B. Whether the BIA Violated Petitioner's Due Process and Equal Protection rights by Issuing a "Streamlined" Decision

Petitioner's remaining claim is that the BIA erred by issuing a "streamlined" decision (*i.e.*, an unpublished decision by a single board member) when it rejected the merits of his appeal. In particular, he argues that the agency violated his right to due process of law and to equal protection of the laws under the Fifth Amendment.

In *Kambolli v. Gonzales*, 449 F.3d 454 (2d Cir.2006), we held that we lack jurisdiction to review a single Board member's decision unilaterally to affirm a decision pursuant to the "streamlining" regulations adopted by the Department of Justice, 8 C.F.R. § 1003.1(e), rather than

---

**18.** Although petitioner relies on two other cases, *Patel v. Landon*, 739 F.2d 1455 (9th Cir.1984) (holding that an advance parolee should have been subject to deportation proceedings, rather than exclusion proceedings) and *Joshi v. INS*, 720 F.2d 799 (4th Cir.1983) (same), to support his claim that his trips abroad pursuant to the grant of advance parole did not alter his immigration status, this reliance is misplaced. *Patel* and *Joshi* were decided before 1986, when the Attorney General amended 8 C.F.R. § 245.2 to explicitly provide that advance parolees would be subject to exclusion, rather than deportation, proceedings upon their return to the United States. *See* Adjustment of Status to that of Persons Admitted for Permanent Residence, Advance Parole, 51 Fed.Reg. 7431, 7432

(March 4, 1986) (codified as amended at 8 C.F.R. § 245.2(a)(4)). In promulgating these amendments, the Attorney General specifically included commentary in the Federal Register disapproving of the holdings in *Patel* and *Joshi* and noting the agency's intent to "remove the underpinning of those decisions." *Id.* at 7431.

**19.** Insofar as petitioner also claims that the IJ's order of removal was in error because "the DHS failed to sustain the charges of removability by clear, convincing, and unequivocal evidence," Petitioner's Br. at 7, this argument is also without merit for the reasons stated above.

refer the case to a three-member panel of the BIA. Accordingly, pursuant to our holding in *Kambolli*, we do not have jurisdiction to review the BIA's decision to resolve petitioner's claims without consideration by a three-member panel. *See id.* at 458–65.

■ As for petitioner's related argument that the single Board member's decision to issue a summary affirmance (rather than a written opinion) was error under governing BIA regulations, *see* Petitioner's Br. at 25, we find the argument to be unavailing. In *Kambolli*, we explicitly left open the question of whether we have jurisdiction to review a petitioner's claim that a single BIA member erred in ... affirming an IJ *without opinion." See Kambolli*, 449 F.3d at 462 n. 11 (emphasis added). We do not address that question here because, assuming, without deciding, that we have jurisdiction to consider petitioner's argument, we conclude that the argument is *without merit*. BIA regulations squarely and unambiguously support the IJ's conclusion that petitioner was an "arriving alien" who was properly subject to a determination of admissibility, as opposed to deportability. Therefore, it was not error for the BIA, when considering the circumstances under which a Board member may affirm an IJ's decision without opinion set forth in 8 C.F.R. § 1003.1(e)(4)-(e)(5), to conclude that no written opinion was warranted in the instant case.

■ Finally, in reviewing petitioner's constitutional arguments, we conclude that these arguments are without merit. We have previously upheld the BIA's streamlining regulations in the face of constitutional challenges brought by petitioners, and the instant petitioner presents no arguments that cause us to reconsider the constitutionality of such regulations. *See, e.g., Yu Sheng Zhang v. U.S. Dep't of Justice*, 362 F.3d 155, 156–59 (2d Cir.2004) (holding that the issuance of a "streamlined" decision did not violate an alien's Due Process rights); *cf. Furman v. United States*, 720 F.2d 263, 264 (2d Cir.1983) (noting that "[t]here is no requirement in the law that a federal appellate court's decision be accompanied by a written opinion.").

## CONCLUSION

We have considered all of petitioner's remaining arguments and find each of them to be without merit.[20]

To summarize, we hold that:

(1) The applicable INS regulations manifest the agency's unambiguous intent to treat aliens who return to the United States pursuant to a grant of advance parole, and are subsequently denied a pending adjustment-of-status application, as "arriving aliens" and "applicants for admission";

---

**20.** In particular, we reject those of petitioner's arguments—raised for the first time on appeal—that are predicated on a theory of equitable estoppel, *see, e.g.,* Petitioner's Br. at 15, because, *inter alia,* they ignore the warning on petitioner's parole form that he would be subjected to "exclusion" proceedings if his adjustment-of-status application was denied. *See* Joint Appendix ("JA") at 110. We also reject petitioner's arguments which rely on the BIA's unpublished decision by a single member of the Board in *In re Vargas–Reyes* A

74 891 947 (BIA March 6, 2000), JA at 154, because the decision is not binding BIA precedent, *see* 8 C.F.R. § 1003.1(g) (granting BIA authority to select opinions for publication) (2005). Moreover, it appears likely—based on the limited facts available from the BIA's opinion—that the decision in *Vargas–Reyes* misinterprets the exception to the definition of an "arriving alien" set forth in 8 C.F.R. § 1.1(q) for aliens who would otherwise be subject to expedited removal proceedings.

(2) these applicable regulations are supported by the governing statute, which manifests Congress's view that parole does not constitute an alien's "entry" or "admission" to the United States;

(3) the IJ did not err in treating petitioner as an "arriving alien" and an "applicant for admission," or in denying petitioner's motion to terminate his removal proceedings;

(4) we lack jurisdiction to consider petitioner's argument that the BIA erred in issuing a decision by a single-member panel of the Board;

(5) assuming *arguendo* that we have jurisdiction to review petitioner's related argument that the BIA erred by affirming the decision of the IJ without a written opinion, the argument is without merit;

(6) petitioner's constitutional claims arising from the BIA's affirmance without opinion of the IJ's decision are without merit.

\* \* \* \*

Accordingly, we DENY the petition for review insofar as it relates to (1) the IJ's denial of petitioner's motion to terminate his removal proceedings and (2) the BIA's affirmance of the IJ's decision without a written opinion, and we DISMISS the petition insofar as it relates to the single Board member's decision not to refer petitioner's case to a three-member panel.