PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1379
_____

OCHOLI OCHALA IREDIA,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A078-193-552)
Immigration Judge:  Steven A. Morley
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 9, 2021

Before:  SHWARTZ, PORTER and FISHER, Circuit Judges.
(Filed: February 11, 2022)

Carlos R. Munoz
Sachs Law Group
1518 Walnut Street, Suite 610
Philadelphia, PA 19102
        *Counsel for Petitioner*

Brian Boynton, Acting Assistant Attorney General
Anthony P. Nicastro, Assistant Director
Kristen H. Blosser
Jonathan A. Robbins
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

An Immigration Judge (IJ) entered a final order of removal holding that Ocholi Ochala Iredia, a citizen of Nigeria, is inadmissible to the United States. The Board of Immigration Appeals (BIA) dismissed his appeal. Iredia petitions for review

of the BIA's decision. We will deny the petition.[1]

Iredia was admitted to the United States in 1997 on a tourist visa, which he overstayed. Later, he was granted advance parole, left the United States, returned in November 2006, and was paroled into the country. The parole was valid until November 2007. Iredia overstayed the parole and, in 2011, the Department of Homeland Security served him with a Notice to Appear charging that he was inadmissible "as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. . . ." AR 536 (citing 8 U.S.C. § 1182(a)(7)(A)(i)(I)). After a hearing, the IJ held that Iredia was inadmissible and ordered him removed.

Iredia raises one argument: that he should have been charged as removable, not inadmissible. He contends that when he was served with the Notice to Appear, he already had been admitted to the United States on a tourist visa, and the visa's subsequent expiration did not affect the fact of his admission. Iredia argues that advance parole does not change an individual's immigration status, so he remained an admitted alien while he obtained advance parole, left the country, returned, and was paroled back in. Therefore, he says, he

---

[1] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b) (appeals from decisions of IJs). We have jurisdiction under 8 U.S.C. § 1252(a) (judicial review of final orders of removal). Where the BIA issues a reasoned decision, not a summary affirmance, we review its decision and not the IJ's. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006). Iredia raises only a legal argument, and "we review the BIA's legal conclusions *de novo*." *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005).

should not have been charged as inadmissible under 8 U.S.C. § 1182(a)(7). He admits that he may have been removable under 8 U.S.C. § 1227,[2] but asserts that the charging error should have led to the termination of his removal proceedings.

The Government argues that Iredia did not administratively exhaust this argument. A petitioner meets the exhaustion requirement "so long as [he] makes some effort, however insufficient, to place the [BIA] on notice of a straightforward issue being raised on appeal." *Nkomo v. Att'y Gen.*, 986 F.3d 268, 272 (3d Cir. 2021) (quoting *Yan v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005)). Iredia made a variety of arguments in his brief to the BIA, but we are unable to identify where he made the argument he now raises before us. The BIA, however, apparently perceived something that we do not. It applied the relevant statute and regulation and held that, after Iredia's parole expired, his "status reverted to the status he held at the time he was paroled into the country on November 6, 2006, which was an applicant for admission to the United States who is inadmissible as an immigrant who lacks a valid immigrant visa or entry document" under § 1182(a)(7)(A)(i)(I). AR 5. Because Iredia's argument, while arguably insufficient, inspired the BIA to rule on the issue he now raises, he did not fail to administratively exhaust the issue.

Turning to the merits of Iredia's argument, the statute permitting parole provides:

> The Attorney General may, except as provided in [exceptions not relevant here], in his discretion parole into the United States

---

[2] "Any alien who was admitted as a nonimmigrant and . . . has failed to maintain the nonimmigrant status in which the alien was admitted . . is deportable [i.e., removable]." 8 U.S.C. § 1227(a)(1)(C)(i).

4

temporarily . . . any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).[3] This statutory language supports the Government's argument that, because Iredia was paroled into the United States in 2006, he is considered an arriving alien regardless of his previous admission. The statute permits the Attorney General to parole "any alien applying for admission"—and no other category of alien. *See id.* And, when parole ends, the alien's case is "dealt with in the same manner as that of any other applicant for admission"—further reinforcing that the paroled alien is considered an "applicant for admission." *Id.*

There is additional statutory and regulatory support for the Government's position. The Immigration and Nationality

---

[3] Neither party argues that this statute is ambiguous, and we perceive no ambiguity. Therefore, we do not owe *Chevron* deference to the BIA's statutory interpretation. *See Singh v. Att'y Gen.*, 12 F.4th 262, 272 (3d Cir. 2021) (explaining, at step one of the rule announced in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984), that "[i]f Congress did not leave the statute ambiguous as to the specific issue under consideration, we do not defer to the agency's interpretation.").

Act's definitions provision includes the following statement in the definition of "admission" and "admitted": "An alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." *Id.* § 1101(a)(13)(B). And the regulatory definitions provision states that "[a]n arriving alien remains an arriving alien even if paroled pursuant to [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2.[4]

We have held the same: "the term 'arriving alien' . . . . encompasses not only aliens who are actually at the border, but also aliens who were paroled after their arrival." *Zheng v. Gonzales*, 422 F.3d 98, 110 (3d Cir. 2005). "Lawful status and admission . . . are distinct concepts in immigration law: Establishing one does not necessarily establish the other." *Sanchez v. Mayorkas*, 141 S. Ct. 1809, 1813 (2021). When Iredia entered the U.S. in 2006, he was not admitted under his long-expired visa—so his presence here could not be an overstay of that visa. Instead, he "re-entered with no legal status greater than that of a parolee[;] he is simply a paroled arriving alien." *Zheng*, 422 F.3d at 111.

The Second Circuit arrived at the same result in *Ibragimov v. Gonzales*, 476 F.3d 125 (2d Cir. 2007). The petitioner there, like Iredia, overstayed a tourist visa, left the country, returned on advance parole, and was charged as inadmissible. *Id.* at 128. And, like Iredia, the petitioner "argue[d] that because he traveled abroad with the government's express authorization, he should have retained his prior status as a visa overstay and been subject to a charge

---

[4] This regulation goes on to say that a grant of advance parole will not mean that an alien is treated as an arriving alien under 8 U.S.C. § 1225(b)(1)(A)(i). *Id.* Section 1225(b)(1)(A)(i) is not applicable here.

of [removability] (rather than inadmissibility)." *Id.* The Second Circuit disagreed and held that the petitioner was inadmissible for several reasons.

First, the Court cited a regulation—one that neither Iredia nor the Government cites here—that provides that if an individual applies for adjustment of status, travels outside the United States, is paroled back in, and then has his application for adjustment of status denied, he "will be treated as an applicant for admission." *Id.* at 133 (emphasis omitted) (quoting 8 CFR § 245.2(a)(4)(B)).[5] That regulation fits Iredia, who "was paroled [in]to the United Status as an adjustment of status applicant" and whose application for adjustment of status was subsequently denied. AR 424-25.[6] Second, the Court looked to the parole statute we examine above, 8 U.S.C. § 1182(d)(5)(A), the terms of which "reflect the well-settled principle that Congress did not intend for parole of an alien to constitute an alien's legal entry or admission to the United States." *Ibragimov*, 476 F.3d at 134. Next, the Second Circuit reasoned that "visa overstays sacrifice their status as overstays

_____

[5] *See also Cheruku v. Att'y Gen.*, 662 F.3d 198, 201 (3d Cir. 2011) ("Advance[] parole permits an alien temporarily to remain in the United States pending a decision regarding his application for admission. When used to enter the United States initially or after travel, this amounts to permission for ingress into the country but is not a formal admission." (internal quotation marks, citation, and alteration omitted)).

[6] Iredia's Record of Deportable/Inadmissible Alien states that when he was paroled in, he was appealing the denial of an I-360 Petition for Amerasian, Widow(er) or Special Immigrant. AR 424-25. That appeal, and a subsequent I-485 Application to Register Permanent Residence or Adjust Status, were unsuccessful. *Id.*

7

when they leave the country and are not admissible on the basis of their expired visas" when they attempt to re-enter, so the petitioner was not "entitled to treatment either as an 'admitted' alien or as a 'visa overstay' when he returned to the country pursuant to his advance parole." *Id.* at 135. And, finally, the Second Circuit cited a Ninth Circuit case holding that "advance parole gave petitioner the right to return for the purpose of completing her Adjustment Application; it did not 'freeze' her status as an illegal overstay." *Id.* at 137 (quoting *Barney v. Rogers*, 83 F.3d 318, 321 (9th Cir. 1996)).

Iredia cites two cases where courts held that a § 1182(a)(7) inadmissibility charge, like the one Iredia faced, is not applicable to an individual who is already in the United States. His Fifth Circuit case is distinguishable because the petitioner had not left the United States and been paroled back in. *Marques v. Lynch*, 834 F.3d 549, 551-52, 562 (5th Cir. 2016). His Eleventh Circuit case does involve a petitioner who had left the country and been paroled back in. *Ortiz-Bouchet v. Attorney General*, 714 F.3d 1353, 1356-57 (11th Cir. 2013) (per curiam). But *Ortiz-Bouchet* is not persuasive. For one thing, the Eleventh Circuit considered the parole question in light of a statute not at issue here.[7] For another thing, the Eleventh Circuit did not cite the parole statutes and regulations we discuss above. *See Ortiz-Bouchet*, 714 F.3d at 1355-57. Nor did it explain why, in light of that statutory and regulatory language, the petitioner could be considered admitted rather than an applicant for admission. *See id.* We do not find the Eleventh Circuit's cursory analysis persuasive, especially

---

[7] The question in *Ortiz-Bouchet*, 714 F.3d at 1357, was whether the petitioner's departure after a grant of advance parole was a "departure" for the purposes of § 1182(a)(9)(B)(i)(II).

compared to the Second Circuit's thorough consideration in *Ibragimov*.

Iredia relies on a Policy Alert issued by U.S. Citizenship and Immigration Services, as well as excerpts from the USCIS Policy Manual, which address the effect of advance parole on Temporary Protected Status (TPS) beneficiaries upon their return to the United States.[8] USCIS, Effect of Travel Abroad by Temporary Protected Status Beneficiaries with Final Orders of Removal, PA-2019-12 (Dec. 20, 2019);[9] USCIS Policy Manual Vol. 7, Part A, Ch. 3 n.19.[10] These authorities do not support Iredia's position. The text he quotes does not state or imply that USCIS is addressing the consequences of advance parole for anyone other than TPS beneficiaries. In fact, the language in the policy manual derives from legislation addressing TPS in particular. *See* Misc. & Tech. Immigration & Naturalization Amends., Pub. L. No. 102-232, § 304(c)(1)(A), (c)(2)(B), 105 Stat. 1733, 1749 (Dec. 12, 1991). Iredia is not a TPS beneficiary, so these USCIS policy

---

[8] Temporary Protected Status may be granted to nationals of designated foreign countries, protecting them from removal. 8 U.S.C. § 1254a(a)(1). "The Government may designate a country for the [TPS] program when it is beset by especially bad or dangerous conditions, such as arise from natural disasters or armed conflicts." *Sanchez*, 141 S. Ct. at 1811; 8 U.S.C. § 1254a(b).

[9] Available at https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20191220-TPSTravel.pdf; last visited Jan. 13, 2022.

[10] Available at https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-3#footnote-19; last visited Jan. 13, 2022.

documents have no bearing on his case.

For these reasons, we will deny the petition for review.